IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

In re:                                          Case No. 17-10327

East West Copolymer LLC,                        Chapter 11

      *Debtor.*

## CHAPTER 11 PLAN OF LIQUIDATION
## PROPOSED BY EAST WEST COPOLYMER, LLC AND
## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
## DATED OCTOBER 20, 2017
## AND IMMATERIALLY MODIFIED AS OF NOVEMBER 29, 2017

**STEWART ROBBINS & BROWN, LLC**
One American Place
301 Main Street, Suite 1640
Baton Rouge, LA 70801
Tel.: (225) 231-9998

*Attorneys for Debtor and*
*Debtor-in-Possession*

AND

**TAYLOR, PORTER, BROOKS &**
  **PHILLIPS LLP**
8th Floor
450 Laurel Street (70801)
Post Office Box 2471
Baton Rouge, LA 70821

*Attorneys for the Official Committee of*
*Unsecured Creditors of East West*
*Copolymer, LLC*

Baton Rouge, Louisiana, U.S.A.
Dated: Wednesday, November 29, 2017

# INTRODUCTION

Debtor, along with the Committee, as those terms are defined herein propose this Plan to resolve the outstanding Claims against and interests in the Estate, and making distributions to holders of Allowed Claims and Interests.  Reference is made to the Disclosure Statement for a discussion of Debtor's history, properties and operations, a summary and analysis of this Plan, risk factors related to this Plan and certain other matters related to the Bankruptcy Case.   Subject to certain restrictions and requirements set forth in Bankruptcy Code § 1127 and Bankruptcy Rule 3019, Proponents reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to the issuance of the order confirming this Plan.

## ARTICLE I.

### DEFINITIONS AND INTERPRETATIONS

**DEFINITIONS.**   Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein or in the Disclosure Statement:

**Administrative Expense Claim** means (a) any Professional Compensation Claim, (b) any Claim constituting a cost or expense of administration of the Bankruptcy Case asserted or authorized to be asserted in accordance with Bankruptcy Code §§ 503(b) and 507(a)(2) during the period up to and including the Effective Date, and (c) any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

**Administrative Expense Claim Bar Date** means the fourteenth (14th) day following the Effective Date.

**Affiliate** means any Person or Entity described under Bankruptcy Code § 101(2).

**Allowed** means that, with respect to a Claim, (i) such Claim has been listed by Debtor in the Schedules, as such Schedules may be amended by Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and no contrary proof of Claim has been filed, (ii) a proof of Claim with respect to such Claim has been timely filed and no objection thereto has been interposed within the time period set forth in this Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or an objection thereto has been interposed and such Claim has been Allowed in whole or in part by a Final Order, (iii) such Claim has been expressly Allowed by a Final Order or under this Plan, or (iv) such Claim has been compromised, settled, or otherwise resolved pursuant to the authority granted to Debtor or Liquidating Trustee pursuant to a Final Order of the Bankruptcy Court or under this Plan; *provided*, *however*, that Claims Allowed solely for the

1

purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" under this Plan.

**Allowed Claim** means a Claim that is Allowed under this Plan and, therefore, is not subject to disallowance, defense, reduction, avoidance, setoff, or subordination of any kind. The term "Allowed Claim" also means any Claim to the extent: (a) such Claim is scheduled by Debtor pursuant to the Bankruptcy Code and Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, zero, undetermined, or disputed and no contrary proof of Claim has been filed; or (b) a proof of Claim was timely filed, or deemed timely filed, with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules or any applicable Final Order, or late filed with leave of the Bankruptcy Court; and, with respect to either (a) or (b) above, (i) is not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules or applicable orders of the Bankruptcy Court or (ii) has otherwise been allowed by a Final Order. An "Allowed Claim" includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires. Except as otherwise expressly provided herein or in a Final Order of the Bankruptcy Court allowing such Claim, the term "Allowed Claim" shall not include (i) any non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, or treble damages, and (ii) any other amounts not allowable under the Bankruptcy Code or applicable law.

**Alluvion** refers to Alluvion Community Capital, LLC.

**Assumed Executory Contract** means any Executory Contract assumed by Debtor pursuant to Bankruptcy Code § 365.

**Avoidance Claims** means any Cause of Action which a trustee, debtor-in-possession, an estate, or other legal representative or appropriate party-in-interest may assert, including Causes of Action under Bankruptcy Code §§ 502, 510, 541, 542, 543, 544, 545, 547, 548 through 551, and 553, or under similar or related state or federal statutes, civil law, and common law, including fraudulent transfer laws, and also including, but not limited to, the Entergy Overpayment Claims, and Debtor's rights of setoff, recoupment, contribution, or indemnity in connection with the foregoing (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) whether or not litigation has been commenced as of the Confirmation Date to prosecute such Avoidance Claims.

**Ballot** means the ballot form accompanying the Disclosure Statement upon which holders of Impaired Claims and Equity Interests who are entitled to vote under this Plan shall indicate acceptance or rejection of this Plan in accordance with the Voting Instructions.

**Balmoral** refers to Balmoral Advisors, LLC, investment banker for Debtor.

**Bankruptcy Case** means the bankruptcy case commenced by Debtor and styled and numbered *In re East West Copolymer LLC*, 17-10327 (Bankr. M.D. La.).

**Bankruptcy Code** means Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, as now in effect or hereafter amended.

**Bankruptcy Court** means the United States Bankruptcy Court for the Middle District of Louisiana.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, FED. R. BANKR. P. 1001 *et seq.*, as promulgated under 28 U.S.C. § 2075, and the Federal Rules of Civil Procedure, FED. R. CIV. P. 1 *et seq.*, and the Local Rules of the Bankruptcy Court, as applicable to the Bankruptcy Case, and as now in effect or hereafter amended.

**Brown & Root** refers to Brown & Root Industrial Services, LLC.

**Brown & Root Liens** refers to the liens aaserted in both Debtor's movable and immovable assets under, *inter alia*, the Louisiana Private Works Act for work performed on Debtor's property and for work and services provided to Debtor for which Brown & Root has not been paid.

**Business Day** means any day other than a Saturday, a Sunday, "legal holidays" (as defined under Bankruptcy Rule 9006(a)), or any other day on which banking institutions in Baton Rouge, LA are required or authorized to close by law or executive order.

**Cash** means legal tender of the United States of America.

**Cash Collateral** has the meaning ascribed to such term under Bankruptcy Code § 363(a).

**Cash Collateral Order** means any order entered by the Bankruptcy Court authorizing Debtor's use of Cash Collateral and providing for, *inter alia*, adequate protection against the diminution in value associated with Debtor's use of Cash Collateral.

**Causes of Action** means, without limitation, any and all actions, proceedings, causes of action, controversies, liabilities, obligations, rights, rights of setoff, recoupment rights, suits, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, franchises, Claims, counterclaims, crossclaims, affirmative defenses, and demands of any kind or character whatsoever, whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in contract or in tort, in law, in equity, or otherwise, based in whole or in

part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Case, including through the Effective Date. Without limiting the generality of the foregoing, when referring to Causes of Action of Debtor or its Estate, Causes of Action shall include: (i) all rights of setoff, counterclaim, or recoupment and Claims on contracts or for breaches of duties imposed by law or equity; (ii) Claims pursuant to Bankruptcy Code §§ 362, 510, 542, 543, 544 through 550, or 553; and (iii) Claims and defenses such as fraud, mistake, duress, usury, and any other defenses set forth in Bankruptcy Code § 558.

**Claim** means any right to payment, as defined in Bankruptcy Code § 101(5).

**Claims Objection Deadline** means, for all Claims, including Administrative Expense Claims, the fifty-sixth (56th) day after the Effective Date.

**Class** means any group of Claims or Equity Interests classified herein pursuant to Bankruptcy Code § 1123(a)(1).

**Clerk** means the clerk of the Bankruptcy Court.

**Collateral** means any property or interest in property of the Estate of the Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**Committee** refers to the Official Committee of Unsecured Creditors constituted by the United States Trustee.

**Confirmation** means the entry of the Confirmation Order, subject to all conditions specified in Article IX hereof having been (i) satisfied or (ii) waived pursuant to Article IX.

**Confirmation Date** means the date of entry by the Clerk of the Confirmation Order.

**Confirmation Hearing** means the hearing to consider Confirmation of this Plan.

**Confirmation Order** means the order Entered by the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code § 1129, which shall contain, among other provisions, the appointment of the Liquidating Trustee by the Bankruptcy Court.

**Coverage Premium** refers to the D&O Coverage premium payment in the amount of $19,360 that was advanced by Main Street from Cash Collateral on or about July 31, 2017.

**Cure Amount** means the amount required to cure any default under an Executory Contract, as provided under Bankruptcy Code § 365, but only to the extent (i) that the holder of an Executory Contract has filed a proof of Claim in accordance with the Bankruptcy Rules setting out such amount and the proof of Claim is not subject to objection by Debtor or Liquidating Trustee (ii) the Cure Amount is scheduled by Debtor pursuant to this Plan, or (iii) as the Cure Amount is established by Final Order of the Bankruptcy Court upon timely objection and after hearing.

**Creditor** means any Person who holds a Claim against Debtor.

**D&O Claims** refers to certain Causes of Action against Debtor's officers and directors whether or not covered by insurance.

**D&O Coverage** refers to the insurance that may cover certain D&O Claims.

**Debtor** or **EWC** refers to East West Copolymer LLC.

**Disallowed** means, with reference to any Claim or a portion of a Claim, any Claim against any of Debtor that (i) has been disallowed by a Final Order of the Bankruptcy Court, (ii) has been listed by such Debtor in the Schedules, as such Schedules may be amended by Debtor from time to time in accordance with Bankruptcy Rule 1009, as $0.00, contingent, disputed, or unliquidated and as to which no proof of Claim has been filed by the applicable deadline or deemed timely filed pursuant to any Final Order of the Bankruptcy Court, (iii) has been agreed to by the holder of such Claim and the applicable Debtor to be equal to $0 or to be expunged, or (iv) has not been listed by such Debtor on the Schedules and as to which no proof of Claim has been filed by the applicable deadline or deemed timely filed pursuant to any Final Order of the Bankruptcy Court.

**Disclosure Statement** means the disclosure statement relating to this Plan, including, without limitation, all exhibits thereto, as approved by the Bankruptcy Court pursuant to Bankruptcy Code § 1125.

**Disputed** means all Claims: (a) which are listed in the Schedules as disputed, contingent, or unliquidated or (b) as to which (i) a proof of Claim has been filed, (ii) an objection, or request for estimation, has been timely filed (and not withdrawn) by any party-in-interest, and (iii) no Final Order has been entered thereon.  In the event that any part of a Claim is disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of Distribution under this Plan unless a Final Order has been entered allowing such Claim or portion thereof. Without limiting the above, a Claim that is the subject of a pending objection, or any other proceeding seeking to disallow, subordinate, or estimate such Claim, shall be deemed to constitute a Disputed Claim.

**Effective Date** means the first Business Day that is at least one (1) full Business Day after the Confirmation Order becomes a Final Order and all the conditions precedent to the Effective Date described Article IX, Section 9.2 of this Plan have occurred or have been waived by written agreement of the Proponents and Main Street.

**Entergy** refers to Entergy Corporation and all subsidiaries, parents, and affiliates thereof.

**Entergy Overpayment Claims** refers to any and all Claims or Causes of Action against Entergy for, *inter alia*, alleged utility expense overpayments.

**Entergy Overpayment Proceeds** refers to the proceeds derived from the settlement, mediation, judgment or other resolution of the Entergy Overpayment Claims.

**Entity** means an entity defined in Bankruptcy Code § 101(15).

**Equity Interest** means any "equity security" as defined under Bankruptcy Code § 101(16) and includes membership interests in limited liability companies.

**Estate** means the bankruptcy estate of Debtor created upon the commencement of the Bankruptcy Case pursuant to Bankruptcy Code § 541, or thereafter acquired as provided in Bankruptcy Code § 541 or any other applicable section of the Bankruptcy Code.

**Executory Contract** means executory contracts and unexpired leases as such terms are used in Bankruptcy Code § 365.

**Exhibit** means an exhibit, schedule or other document annexed to either this Plan or the Disclosure Statement.

**Final Cash Collateral Order** refers to the *Final Order Authorizing Debtor to use Cash Collateral, etc.* [P-176].

**Final Decree** means the decree contemplated under Bankruptcy Rule 3022.

**Final Order** means an order of the Bankruptcy Court or court of competent jurisdiction which, not having been stayed by order of a court of competent jurisdiction, has become conclusive of all matters adjudicated thereby and is in full force and effect.

**Galata** refers to Galata Copolymers, LLC.

**General Claim Bar Date** means July 14, 2017.

6

**General Unsecured Claim** means any Claim against Debtor that is: (i) not an Administrative Expense Claim, Priority Tax Claim, Secured Claim, or Priority Non-Tax Claim; or (ii) otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**Governmental Unit** means United States, State, Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States.

**Governmental Unit Claim Bar Date** means October 4, 2017.

**Guidelines** shall mean the Chapter 11 Operating Guidelines and Reporting Requirements for Region 5 (Amended March 15, 2011) as promulgated by the United States Trustee.

**HTB** refers to Hannis T. Bourgeois, LLP.

**Impaired** means a Claim or Equity Interest that is impaired within the meaning of Bankruptcy Code § 1124 and applicable case law.

**Initial Funding** means the sum of $30,000.00 to be provided by Main Street from Cash Collateral to the Liquidating Trust as set forth in Section 6.2(c) herein.

**Insider** means any Person or Entity described under Bankruptcy Code § 101(31).

**IRC** means Title 26 of the United States Code, 26 U.S.C. § 1 *et seq.*, as now in effect or hereafter amended.

**IRS** means the Internal Revenue Service.

**LDR** refers to the Louisiana Department of Revenue.

**Lien** shall have the meaning ascribed to such term under Bankruptcy Code § 101(37) and includes mortgages, security interests, purchase money security interests, privileges, liens, judgments, and encumbrances, whether arising prior to or subsequent to the commencement of the Bankruptcy Case, and whether imposed by agreement, understanding, law, equity, or otherwise.

**Lion** refers to Lion Copolymer Holdings, LLC.

**Lion Mortgage** refers to the formerly existing mortgage upon Debtor's immovable property in favor of Lion, which was recorded on April 16, 2014 and made effective February 11, 2014, but which was assigned, along with rights under an intercreditor agreement, to Main Street.

**Liquidating Trustee** means the Liquidating Trustee, as outlined in Article VI of this Plan, of the Liquidating Trust created by Article VI of this Plan, who shall be appointed by the Bankruptcy Court pursuant to the Confirmation Order

**Liquidating Trust** means the trust created by Article VI of this Plan.

**Main Street** refers to, collectively, Main Street Capital Corporation as administrative agent and collateral agent for itself and co-lenders Main Street Capital II, LP and HMS Income Fund, Inc.

**Main Street Agreed Subordinated Claim** means: (1) Main Street's Claim to the extent is arises from the Claim transferred from Lion[1]; and (2) any Unsecured deficiency Claim arising from Main Street's Class 2 Secured Claim.[2]

**MS Liens** refers to the MS Mortgage and MS Movable Lien, collectively.

**MS Mortgage** refers to the mortgage asserted by Main Street on immovable property owned by Debtor, which was initially recorded on October 21, 2014.

**MS Movable Lien** refers to the security interest asserted by Main Street by virtue of, *inter alia*, a security agreement and UCC-1 filing executed in connection with the credit agreement between Main Street and Debtor.

**MS Reimbursement Fee** refers to the Liquidating Trust's reimbursement of Coverage Premium, which is calculated as follows:

a.  In the event that the Liquidating Trustee pursues D&O Claims, then, from the first gross recovery (provided such gross recovery is in excess of $100,000), before payment of any expenses, costs, or Trust Professional fees (including contingency Professional fees), the Liquidating Trustee shall pay the sum of $38,720 to Main Street. For purposes of this subparagraph, to "pursue" the D&O Claims means any action to pursue D&O Claims, including, the issuance of a demand letter, the issuance of a settlement proposal, pre-litigation mediation, litigation, or otherwise. The payment required by this sub-paragraph shall be made to Main Street, within two (2) business days of receipt of funds by the Liquidating Trustee based upon the pursuit of D&O Claims.

b.  In the event that the Liquidating Trustee pursues D&O Claims, and the result thereof, is either $100,000 or less, or there is no recovery by the Liquidating Trustee, then from the Trust Assets, Liquidating

---

[1] Specifically, any Claim noted within Proof of Claim #21-1 transferred to Main Street pursuant to an assignment located at Docket #190 within the Bankruptcy Case.

[2] Specifically, any deficiency balance arising from the Claim set forth in Proof of Claim #126-1.

Trustee shall pay to Main Street, within two (2) business days of the foregoing result, the sum of $19,360.

c.  In the event that the Liquidating Trustee determines, solely following an internal review by the Trust's Professionals, of the facts and law, that D&O Claims should not be pursued, then the Liquidating Trustee shall pay the sum of $19,360 to Main Street, with such payment due within two (2) business days of the determination not to pursue the D&O Claims.

**Nelson** refers to Gregory N. Nelson.

**Net Liquidation Trust Proceeds** shall have the meaning ascribed in Section 6.2(b) herein.

**Net Tax Credits** refers to the net amount of Tax Credits received after payment of the costs, expenses and fees of Didier Consulting which was retained by the Debtor to recover the Tax Credits.

**Order** means any order, judgment or decree entered in connection with the Bankruptcy Case by the Bankruptcy Court or any other court of competent jurisdiction.

**Order for Relief** means the Order for relief entered by the Bankruptcy Court in the Bankruptcy Case.

**Per Annum** means for a calendar year of 365 or 366 days, as the case may be.

**Person** means any natural person or juridical entity to the broadest extent the term "person" is defined under the laws of the State of Louisiana.  Person also includes any Governmental Unit.

**Petition Date** means April 7, 2017.

**Plan** means this *Chapter 11 Plan of Liquidation Proposed by East West Copolymer, LLC and The Official Committee of Unsecured Creditors Dated October 20, 2017 and Immaterially Modified as of November 16, 2017*, either in its present form or as it may be amended, altered, or supplemented from time to time.

**Plan Supplement** means the compilation of documents and form of documents, schedules, and exhibits to be filed prior to the Voting Deadline, as modified or supplemented prior to the Confirmation Hearing.

**Post-Petition** means any date on or after the Petition Date.

**Pre-Petition** means any date before the Petition Date.

**Priority Claim** means any Claim given priority in payment pursuant to Bankruptcy Code § 507 of the Bankruptcy Code.

**Priority Non-Tax Claim** means any Claim or portion of a Claim given priority in payment pursuant to Bankruptcy Code § 507 of the Bankruptcy Code, but not including Priority Tax Claim and Administrative Expense Claims.

**Priority Tax Claim** means any Claim (or portion or a Claim) of a Governmental Unit entitled to priority under Bankruptcy Code § 507(a)(8).

**Pro Rata** means, at any time, the proportion that the amount of a Claim in a particular Class or Classes (or portions thereof, as applicable) bears to the aggregate amount of all Claims (including Disputed Claims) in such Class or Classes, unless this Plan provides otherwise.

**Professional Compensation Claim** means a Claim for compensation or reimbursement of expenses of a Professional retained in the Bankruptcy Case, and requested in accordance with Bankruptcy Code §§ 326, 327, 328, 330, 331, 503(b), and 1103.

**Professional** means a professional person, as that term in used in Bankruptcy Code §§ 327 and 1103.

**Professional Fee Carve Out** refers to the aggregate amount of $107,500 for SRB and $25,000 (net of retainer) for Shared Management identified on the budget attached to that certain *Second Notice of Extension of Final Order Authorizing Use of Cash Collateral* expected to be filed prior to the Effective Date of the Plan  This carve out does not include amounts claimed by professionals representing the Committee.

**Property of the Estate** means all property or interests in property of Debtor and the Estate of every type and nature pursuant to the Bankruptcy Code.

**Proponents** means the Debtor and the Committee as joint proponents of this Plan.

**Schedules** mean the schedules of assets and liabilities, schedules of Executory Contracts, and the statement of financial affairs as the Bankruptcy Court requires a debtor to file pursuant to Bankruptcy Code § 521, the Official Bankruptcy Forms and the Bankruptcy Rules, which have been Filed by Debtor, as they may be amended and supplemented from time to time.

**Secured Claim** means a Claim (i) secured by Collateral, to the extent of the value of such Collateral (A) as set forth in this Plan, (B) as agreed to by the holder of such Claim and Debtor, or (C) as determined by a Final Order in accordance with

Bankruptcy Code § 506(a) or (ii) secured by the amount of any valid rights of setoff of the holder thereof under Bankruptcy Code § 553.

**Securities Act** means the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, as now in effect or hereafter amended.

**Security** shall have the meaning ascribed to it in Bankruptcy Code § 101(49).

**Security Interest** means a Lien created by agreement.

**Shared Management** refers to Shared Management Resources, Ltd., the chief restructuring officer of Debtor.

**SRB** means Stewart Robbins & Brown, LLC, bankruptcy counsel for Debtor.

**Tax Credits** refers to certain tax credits, and the proceeds thereof, due Debtor from Louisiana Economic Development for operations conducted by Debtor during calendar years 2016 and 2017.

**Taxes** means any and all taxes, levies, imposts, assessments or other charges of whatever nature imposed at any time by a Governmental Unit or by any political subdivision or taxing authority thereof or therein and all interest, penalties or similar liabilities with respect thereto.

**Treasury Regulations** means Title 26 of the Code of Federal Regulations, 26 C.F.R. § 1.0-1 *et seq.*, as now in effect or hereafter amended.

**Trust Assets** means Property of the Estate and property of Debtor, exclusive of Main Street's Collateral, that will be transferred to the Liquidating Trust on the Effective Date, and any property recovered by the Liquidating Trust or proceeds therefrom, including but not limited to D&O Claims, Entergy Overpayment Claims, Avoidance Claims, 40% of the Net Tax Credits and the Initial Funding.

**UCC Professional Fee Carve Out** refers to the aggregate amount of $35,000 to be used as and for Allowed Professional Compensation Claims of the Committee Professionals.

**Unimpaired** means a Claim or Interest that is not Impaired within the meaning of Bankruptcy Code § 1124 and applicable case law.

**United States Trustee** means the United States Trustee appointed under 28 U.S.C. § 581(a)(3) to serve in the Eastern District of Louisiana.

**Unsecured Claim** means any Claim against Debtor that is not a Secured Claim.

**Unsecured Creditor** means the holder of a General Unsecured Claim.

**Voting Classes** shall mean those Classes of Claims or Equity Interests entitled to vote to accept or reject this Plan, as identified in Article III of the Plan.

**Voting Deadline** means the date stated in the Voting Instructions by which all Ballots must be received by SRB.

**Voting Instructions** mean the instructions for voting on this Plan contained in the section of the Disclosure Statement entitled "VOTING PROCEDURES AND REQUIREMENTS" and in the Ballots.

### Rules of Interpretation, Computation of Time and Governing Law

(a)     For purposes of this Plan and the Disclosure Statement: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference herein to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references herein to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Bankruptcy Code § 102; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(b)     In computing any period of time prescribed or allowed hereby, the provisions of Bankruptcy Rule 9006(a) shall apply as though this Plan is an order of the Bankruptcy Court.  Further, all references to a time of day, a day or a date are references to the time, day or date in Baton Rouge, Louisiana, which is located in the Central Time Zone of the United States of America.

(c)     Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Louisiana, without giving effect to the principles of conflict of laws thereof.

(d)    All references in this Plan to monetary figures shall refer to United States of America currency, unless otherwise expressly provided.

EXHIBITS AND SCHEDULES

All Exhibits and Schedules to this Plan and the Disclosure Statement, including this Plan Supplements, are hereby incorporated by reference and made part of this Plan as if set forth fully herein.

ARTICLE II.

As provided in Bankruptcy Code § 1123(a), Administrative Expense Claims are not classified for purposes of voting on, or receiving distributions under, this Plan. Holders of Allowed Administrative Expense Claims are not entitled to vote on this Plan. Rather, they are treated separately under Bankruptcy Code § 1129(a).

ADMINISTRATIVE EXPENSE CLAIMS

**2.1    Time for Filing Administrative Expense Claims.**  Except as otherwise provided in this Plan or the Confirmation Order, requests for Allowance of Administrative Expense Claims, including, but not limited to, Professional Compensation Claims, for services rendered or work performed prior to the Confirmation Date must be filed and served on all parties entitled to notice thereof no later than the Administrative Expense Claim Bar Date.    Holders of Administrative Expense Claims that do not file such requests by the Administrative Expense Claim Bar Date shall be forever barred from asserting such Administrative Expense Claims against Debtor, Liquidating Trust, Debtor's Estate, Property of the Estate, or Trust Assets.    The Liquidating Trust shall not be required to file an objection to Allowance of a purported Administrative Expense Claim if such Administrative Expense Claim is untimely filed.

**2.2    Allowance of Administrative Expense Claims.**    An Administrative Expense Claim with respect to which notice has been properly filed and served shall become an Allowed Administrative Expense Claim if no objection is filed on or prior to the Claim Objection Deadline.  If an objection is timely filed, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent Allowed by Final Order or as such Claim is settled, compromised, or otherwise resolved by Debtor or Liquidating Trust.  An Administrative Expense Claim filed after the expiration of the Administrative Expense Claims Bar Date shall not be an Allowed Administrative Expense Claim and no objection by the Debtor or Liquidating Trust shall be required.

**2.3    Payment of Allowed Administrative Expense Claims.**

(a)    Except to the extent any Entity entitled to payment of any Allowed Administrative Expense Claim agrees to a different treatment, all Allowed

13

Claims specified in Bankruptcy Code § 507(a)(2), including, but not limited to, Allowed Professional Compensation Claims, shall be paid  in full in Cash in an amount equal to such Allowed Administrative Expense Claims on the later of (i) the Effective Date, (ii) the date funds become available to pay such Allowed Administrative Expense Claim or (iii) as soon as practicable after such Administrative Expense Claim becomes payable pursuant to (a) any agreement between Liquidating Trust, as applicable, and the holder of such Administrative Expense Claim or (b) by Final Order.   In the event an Allowed Administrative Expense Claim is not paid in full as either a budgeted item approved by Main Street or pursuant to either the Professional Fee Carve Out or the UCC Professional Fee Carve Out, the Liquidating Trust shall satisfy the remaining balance thereof in accordance with the distribution provisions contained in Section 6.3 of the Plan., Distributions to holders of Allowed Administrative Expense Claims shall come from Property of the Estate, but only to the extent that such property does not constitute Main Street's Cash Collateral, but may be satisfied in accordance with the prior agreements, including carve-outs, between the Debtor, the Committee and Main Street regarding the use of Main Street's Cash Collateral as approved by the Bankruptcy Court or agreed to by the parties.

(b)     Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by Debtor before the Effective Date, except, (i) Professional Compensation Claims, (ii) outside the ordinary course of business borrowing, and (iii) the amount necessary to provide Cure Amounts for the assumption of Executory Contracts, shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions, as the Claims accrue, and only such expenses incurred in the operation of the ordinary course of the business of Debtor, Post-Petition, shall be assumed by Debtor as ordinary course of business obligations, to be paid post-Confirmation as these Claims come due.  Persons doing business with Debtor Post-Petition and prior to the Effective Date, whose Administrative Expense Claims represent Claims arising in the ordinary course of business Post-Petition shall not be required to file a request for payment as otherwise required herein.

(c)     All Administrative Expense Claims incurred prior to the Effective Date are subject to review and approval by the Bankruptcy Court, after notice, hearing and an opportunity to object.

(d)     No payment will be made pursuant to the Professional Fee Carve Out or UCC Professional Fee Carve Out, until and unless a Final Order of the Bankruptcy Court has been entered on an appropriate application by such professional, and then such payment by Main Street shall be from Cash Collateral up to the limitations of either carve-out as such terms are defined in Article I, supra.  The Limitations expressed in the Professional Fee Carve Out or the UCC Professional Fee Carve Out shall not prohibit any professionals covered by such

14

carve-outs from applying for fees and expenses in excess of the carve out limitation expressed in Article I. In the event that the Bankruptcy Court approves a higher amount than the carve out limitation, such excess fees and expenses shall be treated as an administrative expense and paid in accordance with Section 2.3(a), supra.

**2.4** **Voting Rights.** Holders of Allowed Administrative Expense Claims are covered by Bankruptcy Code § 1129(a)(9), and therefore will not be solicited and shall not vote on this Plan.

PRIORITY CLAIMS

**2.5** **Priority Tax Claims.**

(a) Allowed Priority Tax Claims are classified under Class 1b of the Plan. Holders of Allowed Priority Tax Claims shall receive one or more Distributions in accordance with Section 6.3 of the Plan.

(b) However, holders of an Allowed Priority Tax Claims shall not be entitled to receive any payment on account of any penalty (but the term "penalty" shall not include statutory interest on such Allowed Priority Tax Claim) arising with respect to or in connection with the Allowed Priority Tax Claim. Any such Claim or demand for any such penalty shall be subject to treatment in Class 4 relating to General Unsecured Claims. The holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from Debtor, Liquidating Trust, Property of the Estate, or Trust Assets other than as a holder of a General Unsecured Claim. The scheduled claim of the East Baton Rouge Parish Sheriff shall be deemed fully satisfied and the East Baton Rouge Parish Sheriff shall not be entitled to any distribution on account of the scheduled claim.

**2.6** **Priority Non-Tax Claims.** To the extent there are any holders of Priority Non-Tax Claims, Allowed Priority Non-Tax Claims are classified under Class 1b of the Plan. Holders of Allowed Priority Tax Claims shall receive one or more Distributions in accordance with Section 6.3 of the Plan.

**2.7** **Statutory Fees and Court Costs.** United States Trustee's fees do not require allowance by the Court and both pre-confirmation and post-confirmation United States Trustee fees shall be paid timely and in full pursuant to all applicable provisions of the Bankruptcy Code and other statutory provisions. After the Effective Date, Debtor or Liquidating Trustee shall continue to pay quarterly fees to the United States Trustee and file quarterly reports with the United States Trustee until the Bankruptcy Case is closed, dismissed, or converted. This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

**2.8** <u>Claims Arising Under Assumed Executory Contracts.</u>  Except as provided in Article VII of this Plan, Allowed Claims arising under any Assumed Executory Contract shall be paid according to the terms of any Final Order (including the Confirmation Order) of the Bankruptcy Court approving assumption of such Executory Contract, or as otherwise agreed between the holders of such Claims and Debtor or Liquidating Trustee.

## ARTICLE III.

### SUMMARY

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation, and distribution pursuant hereto and pursuant to Bankruptcy Code §§ 1122 and 1123(a)(1).  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1a | Priority Non-Tax Claims | Impaired | Yes |
| 1b | Priority Tax Claims | Impaired | Yes |
| 2 | Main Street Secured Claim | Impaired | Yes |
| 3 | Other Secured Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Main Street Agreed Subordinated Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes |

<u>CLASSIFICATION AND TREATMENT</u>

### 3.1    <u>Class 1 – Priority Claims</u>.

(a)    Class 1 consists of consists of two sub-classes.  Class 1a consists of all Allowed Priority Non-Tax Claims, whereas Class 1b consists of all Allowed Priority Tax Claims.

(b)    Holders of Allowed Priority Non-Tax Claim enjoy slightly higher priority than Holders of Allowed Priority Tax Claims.  Accordingly, Holders of Allowed Priority Non-Tax Claims in Class 1a shall receive one or more Distributions in accordance with Section 6.3 of the Plan.  Holders of Allowed Priority Tax Claims in Class 1b shall receive one or more Distributions immediately after Class 1a has been paid in full in accordance with Section 6.3 of the Plan.  The scheduled Claim of the East Baton Rouge Parish Sheriff shall be deemed fully satisfied and such Claim shall not be entitled to any distribution under this Plan.

(c)    Classes 1a and 1b are Impaired, and are entitled to vote to accept or reject the Plan.

### 3.2    <u>Class 2 – Main Street Secured Claims</u>.

(a)    Class 2 consists of the Main Street Secured Claim.

(b)    The Main Street Secured Claim is Allowed and the MS Liens are deemed first priority Liens upon the immovable and movable property of Debtor.  On account of its Class 2 Claim, Main Street shall receive one or more Distributions in accordance with Section 6.3 of the Plan.  To secure repayment of its Class 2 Claim, Main Street shall retain the MS Liens.  On the Effective Date, the Debtor or the Liquidating Trust will surrender to Main Street all remaining Collateral covered by the MS Liens.  Nothing herein shall prevent Main Street and the Liquidating Trust from negotiating and reaching agreement wherein the Liquidating Trust will liquidate the Main Street Collateral with the consent, and only with the consent, of Main Street according to the terms of any such agreement between those parties.  However, to the extent such Main Street Collateral subject to the MS Liens turned over (or liquidated by agreement) is insufficient to satisfy the Main Street Secured Claim, Main Street shall be entitled to a Class 5 Claim for any deficiency arising therefrom.

(c)    Class 2 is Impaired.  Main Street shall be entitled to vote to accept or reject this Plan on account of the Main Street Secured Claim.

(d)    Nothing in the Plan is, shall be, or be deemed, a modification of any Order, Notice, Ruling, Finding, Agreement, document, or other instrument which is dated on or after the Petition Date, and which affects Main Street, in any manner.

3.3     Class 3 – Other Secured Claims.

(a) Class 3 consists of all Claims filed or scheduled as a Secured Claim other than the Class 2 Main Street Secured Claim.

(b) All collateral securing any such Class 3 Secured Claims has been liquidated or the lien on such collateral is junior in priority to the lien securing the Class 2 Main Street Secured Claim. Any Class 3 Other Secured Claims does not have lien rights in, to or upon property of the estate superior to the liens securing the Class 2 Main Street Secured Claims. However, to the extent that a Holder of an Allowed Class 3 Other Secured Claim possesses a lien on property of the estate superior to any other entity, such Holder of such Allowed Class 3 Other Secured Claim shall be entitled to receive the property securing such Allowed Class 3 Other Secured Claim in full and final satisfaction of its Allowed Class 3 Other Secured Claim. To the extent that a Holder of an Allowed Class 3 Secured Claim possesses a lien on property junior in priority to the liens securing the Class 2 Main Street Secured Claim, such Holder shall be paid in accordance with the provisions of Section 6.3 of the Plan set forth below.

(c) To the extent that the Holder of a Class 3 Other Secured Claim asserts that it possesses a lien on property of the estate, whether superior to all other claimants, such Holder must, on or prior to the entry of the Confirmation Order (or such other time as may be set by the Bankruptcy Court), have its Claim determined to be an Allowed Class 3 Other Secured Claim by order of the Bankruptcy Court. In the event that the Holder of a Class 3 Claim fails to have its Claim allowed as an Allowed Class 3 Other Secured Claim within the time period set forth herein, such claim will be treated as a Class 4 General Unsecured Claim or Class 6 Equity Interest as the case may be, subject to further order of the Court and rights of any party in interest to object to allowance of such claim as a Class 4 Claim or Class 6 Interest.

(d) Proponents, on behalf of themselves each individually, and on behalf of the Reorganized Debtor and the Liquidating Trust to be established upon effectiveness of the Plan, reserve all rights to contest, recalculate, or recharacterize any purported Class 3 or Class 4 Claim.

3.4     Class 4 – General Unsecured Claims.

(a) Class 4 consists of Allowed General Unsecured Claims. The Debtor and Liquidating Trust reserve the right to object to allowance or classification of any Class 4 Claims.

(b) Holders of Allowed Class 4 Claims shall receive one or more Distributions in accordance with Section 6.3 of the Plan.

(c)    Class 4 is Impaired.   Holders of Allowed General Unsecured Claims are entitled to vote on this Plan.

3.5    <u>Class 5 – Main Street Agreed Subordinated Unsecured Claim</u>

(a)    Class 5 consists of the Main Street Agreed Subordinated Unsecured Claim, i.e., Main Street's Claim to the extent it was transferred from Lion and any Unsecured deficiency Claim arising from Main Street's Class 2 Claim.

(b)    Main Street shall receive one or more Distributions in accordance with Section 6.3 of the Plan in connection with its Class 5 Claim.

(c)    Class 5 is impaired.  Main Street shall be entitled to vote on the Plan with respect to its Class 5 Claim.

3.6    <u>Class 6 –Equity Interests</u>.

(a)    Class 6 consists of all Equity Interests in the Debtor.

(b)    Holders of Allowed Class 6 Equity Interests shall receive one or more Distributions in accordance with Section 6.3 of the Plan.

(c)    Class 6 is Impaired, and shall be entitled to vote on the Plan.

3.7    <u>Treatment Satisfies Allowed Claims</u>.

(a)    The treatment in the Plan is in full and complete satisfaction of the legal, contractual and equitable rights that each Entity holding an Allowed Claim or Interest may have in or against Debtor or their interests in property. Unless provided otherwise in the Plan, this treatment supersedes and replaces any agreements or rights those Entities have in or against Debtor or their interests in property.  All distributions under the Plan will be tendered to the Person holding the Allowed Claim in accordance with the terms of the Plan.

(b)    EXCEPT AS SPECIFICALLY SET FORTH IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE ON ACCOUNT OF AND NO RIGHTS WILL BE RETAINED BY THE HOLDER OF (I) ANY CLAIM THAT IS NOT AN ALLOWED CLAIM OR (II) ANY INTEREST THAT IS NOT AN ALLOWED INTEREST.

## ARTICLE IV.

4.1    <u>Voting Classes</u>.    There are five voting Classes under this Plan. Holders of Allowed Claims and Equity Interests in Classes 1, 2, 3, 4, 5, and 6 are Impaired, and therefore are entitled to vote to accept or reject this Plan.

19

**4.2** **Voting Rights as to Confirmation of Plan; Necessity of Allowance of Claims.** If a Claim is a Disputed Claim prior to the Confirmation Date, such Disputed Claim shall not be entitled to vote with respect to this Plan unless such Claim is estimated, for voting purposes, by Final Order of the Bankruptcy Court.

**4.3** **Acceptance by Impaired Classes.** An Impaired Class of Claims shall have accepted this Plan if (a) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan, and (b) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

**4.4** **Presumed Rejection or Acceptance of this Plan.** No Class is presumed to reject this Plan.

**4.5** **Non-Consensual Confirmation.** Debtor reserves the right to seek Confirmation of this Plan under Bankruptcy Code § 1129(b), to the extent applicable, in the event of a rejection by any of the Voting Classes.

## ARTICLE V.

**5.1** **Prosecution of Objections to Claims.** Prior to the Effective Date, the Debtor and the Committee, and after the Effective Date, the Liquidating Trustee shall have the exclusive authority on or before the Claims Objection Bar Date to file objections, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims or Equity Interests. Hearings on any such objections shall be fixed for hearing at least thirty (30) days after the filing of the objections or at such other time as may be fixed by the Bankruptcy Court. Debtor or Liquidating Trustee shall litigate to judgment, settle, or withdraw objections to Disputed Claims, and with regard to objections pending as of Confirmation, Debtor shall be entitled to litigate to judgment, settle, or withdraw objections to Disputed Claims without the necessity of notice or hearing. From and after the Effective Date, Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Debtor and Liquidating Trustee also reserve the right to resolve any Disputed Claims outside the Bankruptcy Court under applicable governing law.

**5.2** **Estimation of Claims.** Debtor, Committee or Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any disputed, contingent or unliquidated Claim pursuant to Bankruptcy Code § 502(c) regardless of whether Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any disputed, contingent, or

unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

   5.3   <u>**Allowance of Claims**</u>.

   **(a)**   Except as to Claims Allowed by the Plan, or as otherwise expressly provided herein or in any order by the Bankruptcy Court prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed, unless and until such Claim is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim.

   **(b)**   Except as to Claims Allowed by the Plan, or any order entered by the Bankruptcy Court prior to the Effective Date (including the Confirmation Order), Debtor and Liquidating Trust after Confirmation will have and retain any and all rights and defenses Debtor had with respect to any Claim as of the Order for Relief.

   **(c)**   Notwithstanding anything to the contrary in the Plan, the Proof of Claim, Number 126, filed by Main Street, and the Proof of Claim, Number 21, filed by Lion, and assigned/transferred to Main Street, are both deemed Allowed, as filed, and no objections thereto shall be filed.

   **(d)**   Similarly, in connection with a settlement between Main Street and Brown & Root with respect to the Brown & Root Liens previously approved by Order, Proof of Claim Number 116 filed by Brown & Root in the amount of $3,432,891 was reduced by $840,000, to $2,592,891.

   **5.4**   <u>**Controversy Concerning Impairment**</u>.  If a controversy arises as to whether any Claims or Equity Interests, or any Class of Claims or Equity Interests, are Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy before the Confirmation Date.

   5.5   <u>**Claim Bar Dates**</u>.

   **(a)**   <u>**General Claim Bar Date**</u>.  Creditors who are not Governmental Units, whose Claim was scheduled as disputed, contingent, or unliquidated, or that did not file a proof of Claim on or before the General Claim Bar Date shall receive no distribution under this Plan and such Claim shall forever be barred and

prohibited from asserting a Claim against Debtor, Liquidating Trust, Property of the Estate, or Trust Assets.

(b)    **Governmental Units**.  Each Governmental Unit holding a Claim against Debtor, including, but not limited to, claims for Pre-Petition taxes, whose Claim was scheduled as disputed, contingent, or unliquidated, or that did not file a proof of Claim on or before the Governmental Unit Claim Bar Date shall receive no distribution under this Plan and such Claim shall forever be barred and prohibited from asserting a Claim against Debtor, Liquidating Trust, Property of the Estate, or Trust Assets.

## ARTICLE VI.

### MEANS OF IMPLEMENTATION

6.1    **Continued Corporate Existence**.  From and after the Effective Date, Debtor shall continue in existence solely for the purposes consistent with the terms of this Plan, which include, *inter alia*: (1) transferring property to Liquidating Trust; (2) liquidating Trust Assets; (3) enforcing and prosecuting claims, rights, interests and privileges of Liquidating Trust, including Causes of Action; (4) filing appropriate tax returns; and (5) assisting in the administration of the Plan and the Liquidating Trust and taking such actions as are necessary to effectuate this Plan. Liquidating Trustee shall serve as the representative of Debtor until the entry of a final decree in the Bankruptcy Case.

6.2    **Vesting and Transfer of Interests in Property**.

(a)    **Orderly Liquidation**.

i.    Upon the Effective Date, Liquidating Trustee shall enter into a Trust Agreement, a form of which is attached hereto as Plan Supplement "1," which will assign ownership of Property of the Estate, inclusive of all tangible and intangible property, movable or immovable and Causes of Action (collectively, the "Trust Assets") to the Liquidating Trust, except Property which constitutes Collateral upon which the MS Liens attach, unless Main Street and the Liquidating Trust reach an agreement authorizing the Liquidating Trust to liquidate such Property, on behalf of and for the benefit of Main Street.  Such transfer shall be deemed to have irrevocably transferred to Liquidating Trust, for and on behalf of beneficiaries of Liquidating Trust, with no reversionary interest in Trust Assets for any equity holder in Debtor.  Pursuant to the Confirmation Order, Dwayne M. Murray shall be appointed the Liquidating Trustee by the Bankruptcy Court, who shall exercise control over Liquidating Trust in accordance with Trust Agreement.  Upon completion of all of the duties of Liquidating Trustee, his discharge, and the closing of this case, any balance of Trustee's Reserved Amount shall be transferred to the registry of the Bankruptcy Court as unclaimed funds.

ii.     Liquidating Trustee of Liquidating Trust shall have full authority to take any steps necessary to administer Trust Assets, including, without limitation, the duty and obligation to pursue and settle any Causes of Action. Upon such transfer (which, as stated above, shall occur on the Effective Date), Liquidating Trustee shall have no other further rights or obligations with respect thereto.  Liquidating Trustee shall neither be required nor obligated to seek approval from the Bankruptcy Court in the performance of his duties as Liquidating Trustee.

iii.    All costs and expenses associated with the administration of Liquidating Trust, including those rights, obligations and duties described this Plan, shall be borne by Liquidating Trust, to enable Liquidating Trustee to perform his duties as trustee under the Trust Agreement and the Plan.

iv.     Liquidating Trustee of Liquidating Trust may retain such law firms, including counsel to the Debtor and/or counsel to the Committee or professionals retained by the Debtor or the Committee, accounting firms, experts, advisors, consultants, investigators, appraisers, auctioneers or other professionals as he may deem necessary (collectively, the "Trust Professionals"), in his sole discretion, and at the sole expense of the Liquidating Trust, to aid in the performance of his responsibilities pursuant to the terms of the Plan including, without limitation, the liquidation and distribution of Liquidating Trust and Liquidating Trustee may pay the fees and costs of such Trust Professionals, costs of administration of the Liquidating Trust, and commissions of Liquidating Trustee in the ordinary course of business and without Bankruptcy Court authority.

v.      For federal income tax purposes, it is intended that the Liquidating Trust be classified as a trust under Treasury Regulation 301.7701-4 and that such trust be owned by its beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in Trust Assets and then contributed such interests to Liquidating Trust.  The Trust Agreement shall (i) state that the primary purpose of the Trust is to liquidate the Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose and (ii) contain a fixed or determinable termination date that is generally not more than five (5) years from the date of creation of Liquidating Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to its liquidating purpose.  Each such extension must be approved the Bankruptcy Court within two (2) months before the beginning of the extended terms.

vi.     Liquidating Trustee shall be responsible for filing all federal, state and local tax returns for Liquidating Trust. Liquidating Trustee shall file all

federal tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation 1.671-4.

vii.    Liquidating Trustee shall make all distributions from Trust Assets in accordance with the provisions of and priorities accorded under the Plan.

viii.    Liquidating Trustee shall be entitled to a commission for services in an amount equal to the greater of (a) three percent (3%) of all Cash distributions from the Trust or (b) $30,000.

ix.    The duties of Liquidating Trustee shall be limited to those provided herein, or within the Trust Agreement.  Liquidating Trustee shall have no liability to any Person or Entity, including Creditors, for actions taken as Liquidating Trustee, unless such actions were grossly negligent or intentional.

x.    Liquidating Trustee shall be the representative of the Estate for purposes of Bankruptcy Code § 1123(b)(3), and shall be entitled to take all actions, and assert all powers and rights of a trustee under the Bankruptcy Code, including pursuit of avoidance actions under Chapter 5 of the Bankruptcy Code, and objecting to proofs of Claim.

### (b)   Net Liquidation Trust Proceeds.

"Net Liquidation Trust Proceeds" shall be defined as the sum of all proceeds from the orderly liquidation of Trust Assets, after deduction of:

1.    MS Reimbursement Fee;

2.    Fees of Trust Professionals employed by Liquidating Trustee;

3.    Fees of the Liquidating Trustee; and

4.    Other reasonable and necessary administrative costs, reserving to all interested parties the right to notice and an opportunity for hearing of any objections to such costs.

### (c)   Initial Funding.

Main Street shall fund the Liquidating Trust with the sum of $30,000, from Cash Collateral, to be used as may be determined by the Liquidating Trustee.  For clarity, this amount is in addition to the UCC Professional Fee Carve Out.

### 6.3    Distribution Scheme

Except as otherwise provided in this Plan, all Net Liquidation Trust Proceeds collected by the Liquidating Trustee shall be distributed as follows and on a Pro Rata basis within each Class:

- <u>First</u>, to the extent any Trust Assets constitute Main Street's collateral, in payment of Main Street's Class 2 Secured Claim, except as may be agreed by Main Street and the Liquidating Trust.[3]

- <u>Second</u>, to the extent that an Allowed Class 3 Other Secured Claim possesses a lien in, to or upon collateral which was junior in priority to the lien securing payment of the Allowed Class 2 Main Street Secured Claim, and after payment in full of the Allowed Class 2 Secured Claim, proceeds from such collateral exist, such remaining proceeds will be paid to Holders of Allowed Class 3 Other Secured Claims in the order and priority of such liens.  To the extent that there are multiple liens junior in rank to the lien securing the Allowed Class 2 Main Street Secured Claim, such remaining proceeds will be paid to most senior remaining Allowed Class 3 Other Secured Claim until such remaining senior Allowed Class 3 Other Secured Claim is paid in full, then to the next remaining senior Allowed Class 3 Other Secured Claim until such proceeds are exhausted.

- To the extent any Trust Assets do not constitute Main Street's Collateral:

  o  <u>First</u>, in payment in full of Allowed but unpaid Chapter 11 Administrative Expense Claims

  o  <u>Second</u>, in payment in full of Allowed Class 1a Claims.

  o  <u>Third</u>, in payment in full of all Allowed Class 1b Claims.

  o  <u>Fourth</u>, in payment in full of all Allowed Class 4 Claims.

  o  <u>Fifth</u>, in payment in full of Main Street's Class 5 Claim<u>.</u>

  o  <u>Sixth</u>, after all such payments and when and if all Creditors holding Allowed Class 1a, 1b, 2, 3, 4, and 5

---

[3] Notwithstanding anything herein, should the Liquidating Trust and Main Street agree to allow the Liquidating Trust to liquidate property constituting the Collateral of Main Street, the Liquidating Trust and Main Street may enter into any agreements regarding the liquidation of and distribution of proceeds from such Collateral.

Claims have been paid in full with Pre-Petition and Post-Petition interest (if any), then holders of Allowed Equity Interests in Class 6 shall receive the balance of any remaining funds by Pro Rata distribution.

### 6.4    Sale and Transfer of Trust Assets

Liquidating Trustee may hire one or more Professionals to liquidate Trust Assets.

If any Trust Assets are sold, Trust Assets being sold shall be transferred to the purchaser in full and complete satisfaction of any Claims, Liens, Interests or other encumbrances of any kind or nature whatsoever against Trust Assets. The transfer of Trust Assets to the purchaser shall vest the purchaser with all rights, title, and interest of Debtor and Liquidating Trust to Trust Assets free and clear of any and all Liens, Claims, Interests and other encumbrances of any type whatsoever (whether known or unknown, secured or unsecured or in the nature of setoff or recoupment, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, Allowed or disallowed, assessed or unassessed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the Petition Date, and whether imposed by agreement, understanding, law, equity, or otherwise, including Claims otherwise arising under doctrines of successor liability), including those that: (i) purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of Debtor's interest in Trust Assets, or any similar rights; (ii) relate to or which arise as a result of any principal or interest due as of the Effective Date; and (iv) relate to taxes arising under or out of, in connection with, or in any way relating to Trust Asset, including the transfer of Trusts Asset to the purchaser (all such Liens, Claims, interests, and encumbrances listed herein, the "Claims and Interests").

Except as expressly permitted or otherwise specifically provided for herein, pursuant to Bankruptcy Code § 1141(c), Liquidating Trust's (formerly Debtor's) right, title and interest in Trust Assets shall be transferred to the purchaser free and clear of all Claims and Interests, with all such Claims and Interests to attach to the proceeds from the sale of Trust Assets in the order of their priority against Trust Asset, with the same validity, force, and effect which they had as against Trust Assets immediately before such transfer, subject to any claims and defenses Debtor or Trustee possessed with respect thereto. To be clear, however, to the extent that such Trust Asset constitutes the Collateral of Main Street or the Holder of an Allowed Class 3 Other Secured Claim, the Trust may not sell such Trust Asset without the consent of Main Street or the Holder of the Allowed Class 3 Other Secured Claim, as the case may be, whose Collateral is sought to be sold. Moreover, the sale of such Collateral and transmission of proceeds therefrom shall not

constitute a full and final satisfaction of the Allowed Class 2 Main Street Secured Claim or the Allowed Class 3 Other Secured Claim unless such proceeds are of an amount equal to the balance then existing of such Allowed Claims.

At the closing of the sale of each Trust Asset, the closing attorney will remit from the proceeds all realtor's fees and closing costs associated with the particular property, before next paying all Secured Claims against the property in the rank indicated herein.

The Confirmation Order shall be effective as a determination that (a) Liquidating Trustee, on Liquidating Trust's behalf, is authorized to employ a licensed professional to market and obtain a qualified offer on each of Trust Assets; (b) upon the closing of each sale, all Claims and Interests of any kind or nature whatsoever existing to or in Trustee Assets prior to the closing of the sale have been unconditionally released, discharged, and terminated (other than any obligations surviving by agreement), and that the conveyances described herein have been effected; (c) the Claims and Interests associated with Trust Assets shall attach to the proceeds from the sale of Trust Assets in the order of their priority against Trust Asset, with the same validity, force, and effect which they had as against Trust Asset immediately before such transfer, subject to any claims and defenses the Estate or Liquidating Trustee possessed with respect thereto; and (d) the Confirmation Order shall be binding upon and shall govern the acts of all entities including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons and Entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Trust Assets.

## 6.5    Funding for Disbursements

Funds needed to make Cash payments on the Effective Date under this Plan shall come from Trust Assets.

## 6.6    Dates of Distributions

Any Distributions to be made by Liquidating Trustee to Holders of Class 1a, 1b, 2, 3, 4 or 5 Claims or Equity Interests, shall be made in accordance with the distribution scheme set forth in Section 6.3 of the Plan, but only after Liquidating Trustee has liquidated substantially all non-Cash Trust Assets.

**6.7    Cancellation of Instruments.**  Unless otherwise provided in the Plan, after the Effective Date, all notes or instruments reflecting Claims against Debtor, or security interests, Liens or encumbrances upon Property of the Estate which are recorded in the public records of any appropriate governmental authority shall be

cancelled on such public records at the request of Debtor or Liquidating Trustee by the holder of such Claim, security interest, Lien or encumbrance, save and except the Liens, notes, security agreements and other public record filings evidencing the MS Liens shall not be cancelled or requested to be cancelled until payment in full of the balance owed under such notes and ancillary documents.  In the event the holder fails to comply with such request, the Bankruptcy Court shall reserve jurisdiction to enter orders directing such holder to cancel such recordation or recorded instrument, or may authorize the applicable governmental authority to accept a cancellation request made by Debtor or Liquidating Trustee and thereby cancel such recordation or recorded instrument on its public records.

6.8    **Prepayment.**  EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, DEBTOR OR LIQUIDATING TRUSTEE SHALL HAVE THE RIGHT TO PREPAY, WITHOUT PENALTY, ALL OR ANY PORTION OF AN ALLOWED CLAIM OR CLASS OF ALLOWED CLAIMS AT ANY TIME.

### 6.9    Management and Continued Existence of Liquidating Trustee.

From and after the Effective Date, Debtor shall continue in existence solely for the purposes consistent with the terms of the Plan, which include, *inter alia*: (1) transferring property to Liquidating Trust; (2) liquidating Trust Assets; (3) enforcing and prosecuting claims, rights, interests and privileges of Liquidating Trust, including Causes of Action; (4) filing appropriate tax returns; and (5) assisting in the administration of the Plan and taking such actions as are necessary to effectuate the Plan.  Liquidating Trustee shall serve as the representative of Debtor until the entry of a final decree in the Bankruptcy Case.

### 6.10    Validity of Existence and Transfer of Property to Trust.

Confirmation of the Plan shall constitute a determination by the Bankruptcy Court that all property to be conveyed by Debtor to Liquidating Trust is owned by Debtor, that Debtor validly exists, and was properly organized.  Further any and all property to be conveyed to Liquidating Trust shall be conveyed free and clear of any and all claims or interests except as specifically provided for or reserved under the Plan.

6.11    **Causes of Action and Avoidance Actions**.  Except to the extent such Avoidance Action are deemed waived under the Plan, as of the Effective Date, pursuant to Bankruptcy Code § 1123(b)(3), any and all Causes of Action, other than a Cause or Causes of Action which constitutes the Collateral securing the MS Liens, shall be property of Liquidating Trust, and shall vest in Liquidating Trustee as the Bankruptcy Court approved representative of the Estate under Bankruptcy Code § 1123(b)(3).  Causes of Action constituting Collateral securing the MS Liens shall be transferred by the Debtor, on the Effective Date, to Main Street unless Main Street

and the Liquidating Trust enter an agreement whereby such Cause of Causes of Action may instead be prosecuted by the Liquidating Trust, in which case, such Cause or Causes of Action shall be transferred to the Liquidating Trust. Liquidating Trustee shall be deemed, without further action of the Bankruptcy Court, to be the judicial substitute as the parties-in-interest with Bankruptcy Court approved standing in the Bankruptcy Cases, under the Plan, or in any judicial proceeding or appeal to which Debtor are a party, or in which Liquidating Trustee shall become a party, and shall have the standing as provided in the Plan, to pursue any and all Causes of Action retained under the Plan. Causes of Action outlined in subsection (6) below shall not be collateral of Main Street, and shall vest in the Liquidating Trust.

The following Causes of Action shall be retained:

1.    Any and all D&O Claims.

2.    Any and all Entergy Overpayment Claims.

3.    Actions arising under Chapter 5 of the Bankruptcy Code, and more fully identified on Plan Supplement "2"

4.    Claims for the recovery of any and all accounts receivable of the Debtor, including but not limited to Veyance Technologies, Inc. and Continental Tire Company

5.    Subject to the provisions and limitations set forth in this Plan, the right to object to any Claim or Interest filed by a Holder of such Claim or Interest, or to seek to recharacterize or subordinate such Claim or Interest.

6.    Single business enterprise, business continuation, or other like claims which could result in substantive consolidation or other similar relief.

### FUNDING FOR DISBURSEMENTS

**6.12    Effective Date Payments.**  Funds needed to make Cash payments on the Effective Date under this Plan shall come from Trust Assets.

**6.13    Post-Effective Date Payments.**  All payments after the Effective Date shall be made by Liquidating Trustee from Net Liquidation Trust Proceeds. Liquidating Trustee reserves the right to liquidate additional property not specifically identified herein as such may later be identified to reduce or pay in full the balance of an Allowed Secured Claim.  Liquidating Trustee also reserves the right to obtain third-party financing after the Effective Date (and without

Bankruptcy Court approval) to satisfy any outstanding Allowed Claims, or any portion thereof, due under this Plan.

**6.14   Disbursing Agent.**   All disbursements post-Effective Date shall be made by Liquidating Trustee.

**6.15   Surrender of Instruments.**   Not later than the twenty-eighth (28th) day following the Effective Date, each holder of a promissory note evidencing a Claim which is not an Allowed Claim shall surrender such note to Debtor or Liquidating Trustee and such note shall be canceled, or shall establish the unavailability of such note.

**6.16   Cancellation of Instruments.**   Unless otherwise provided herein and except with respect to the MS Liens, after the Effective Date, all notes or instruments reflecting Claims against Debtor, or security interests, liens or encumbrances upon the Property of the Estate which are recorded in the public records of any appropriate governmental authority shall be cancelled on such public records at the request of Debtor or Liquidating Trustee by the holder of such Claim, security interest, lien or encumbrance.   In the event the holder fails to comply with such request, the Bankruptcy Court shall reserve jurisdiction to enter orders directing such holder to cancel such recordation or recorded instrument, or may authorize the applicable governmental authority to accept a cancellation request made by Debtor or Liquidating Trustee and thereby cancel such recordation or recorded instrument on its public records.

**6.17   Prepayment.**   EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, DEBTOR OR LIQUIDATING TRUSTEE SHALL HAVE THE RIGHT TO PREPAY, WITHOUT PENALTY, ALL OR ANY PORTION OF AN ALLOWED CLAIM OR CLASS OF ALLOWED CLAIMS AT ANY TIME.

**6.18   Notice and Opportunity for Cure.**   In the event Debtor or Liquidating Trustee were to fail to make any payment or perform any obligation when due under this Plan or under any instrument issued under this Plan, the affected claimant shall give ten (10) days' written notice to Debtor or Liquidating Trustee with opportunity to cure any such failure.   If cure is not timely affected by Debtor or Liquidating Trustee, then and only then may such claimant proceed to enforce its rights and remedies pursuant to applicable law.

### MANAGEMENT AND CONTINUED EXISTENCE OF LIQUIDATING TRUSTEE

**6.19   Continuation of Equity Interests.**   On the Effective Date, all Allowed Equity Interests in Debtor shall be continued and shall become Equity Interests, in the same proportion as existed prior to the Bankruptcy Case, in Liquidating Trustee.

6.20    **Management of Debtor on or after the Effective Date.**

(a)    **Debtor' Managers.**    On and after the Effective Date, Debtor's officers, director and managers shall be deemed to have resigned effective as of the Effective Date.

(b)    **Compensation of Debtor' Management.**    Debtor's officers, directors and managers shall not be entitled to any compensation on or after the Effective Date.

6.21    **Continued Existence.**    From and after the Effective Date, Debtor shall continue in existence solely for the purposes consistent with the terms of this Plan, which include, *inter alia*: (1) transferring property to Liquidating Trust; (2) liquidating Trust Assets; (3) enforcing and prosecuting claims, rights, interests and privileges of Liquidating Trust, including Causes of Action; (4) filing appropriate tax returns; and (5) assisting in the administration of the Plan and taking such actions as are necessary to effectuate this Plan.    Liquidating Trustee shall serve as the representative of Debtor until the entry of a final decree in the Bankruptcy Case.

6.22    **Approvals.**    On the Effective Date, all matters provided for under this Plan that would otherwise require approval of Debtor or Liquidating Trustee, including the adoption and effectiveness of the restated articles of organization or a restated operating agreements, and the election or appointment of managers of Liquidating Trustee shall be deemed to have occurred and shall be in effect from and after the Effective Date without any requirement of further action by Liquidating Trustee or their respective members or managers.

## ARTICLE VII.

7.1    **Treatment of Executory Contracts.**

(a)    Any Executory Contracts not specifically assumed as provided for in the Plan, or within assumption proceedings pending as of the Confirmation Hearing shall be deemed rejected by Confirmation as of the Confirmation Date. Notwithstanding the foregoing, to the extent that the policies of insurance constituting the D&O Coverage[4] are deemed to be executory contracts within the meaning of 11 U.S.C. § 365, such policies of insurance shall be assumed via Confirmation of the Plan, and shall not be deemed to be rejected.  In the event that the policies of insurance constituting the D&O Coverage are not executory contracts subject to assumption or rejection, such policies of insurance constituting the D&O Coverage shall pass through bankruptcy unaffected and shall not be deemed to be rejected by the Debtor.

---

[4] Including, but not limited to, Policy #PCD 9301371-02 issued by Arch Insurance Company and any extensions thereof.

(b)     All Claims arising from the rejection of Executory Contracts must be evidenced by properly filed proofs of Claim.  Counterparties to any rejected Executory Contract shall have forty-five (45) days from the entry of the Confirmation Order to assert a claim for damages resulting from the rejection of the respective Executory Contract.  Any Claims not filed on or before such date shall be forever barred and prohibited from assertion against Debtor, Liquidating Trust, the Estate, Property of the Estate, and Trust Assets.  Unless otherwise ordered by the Bankruptcy Court, all Claims arising from rejection of Executory Contracts shall be General Unsecured Claims and treated as Class 3.

(c)     If any Assumed Executory Contracts exist as of the date of Confirmation or proceedings are pending to assume and/or assign any Executory Contract as of the date of Confirmation, then the Confirmation Order shall constitute an Order authorizing the assignment of any Assumed Executory Contract from Debtor to Liquidating Trust effective upon the later of (a) the Effective Date or (b) the date of the entry of a Final Order within any assumption proceeding pending as of the Confirmation Hearing.  The Confirmation Order shall also constitute an Order and findings of the Bankruptcy Court concluding that all conditions and requirements for assignment of any Assumed Executory Contract have been satisfied or waived unless an objection thereto has been filed prior to the deadline to filing an objection to confirmation of the Plan.  The Debtor and Committee do not believe any such executory contracts have been assumed, or proceedings to assume an executory contract will have been initiated as of Confirmation.

(d)     Any Executory Contract listed on Debtor's Schedule G[5] which has neither been assumed nor rejected as of the Confirmation Date of the Plan will be deemed to have been rejected by Debtor as of the Confirmation Date, without further order of the Bankruptcy Court.  Except as provided in Section 7.1(a), above, with respect to D&O Coverage, the Debtor anticipates the following Executory Contracts will be assumed: *NONE*.

### ARTICLE VIII.

8.1     **Completion of Distributions.**  If any Distribution or any other act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.2     **Name and Address of Holder.**  For purposes of all Distributions, the Liquidating Trustee shall be entitled to rely on the name and address of the holder of each Allowed Claim or Equity Interest as shown any timely filed proof of Claim

---

[5] Schedule G was filed on May 8, 2017, 2017 [P-146, pages 155-161], and is attached to the Disclosure Statement as Exhibit "DS-4."

and, if no such proof of Claim is filed, as shown on the Schedules, except to the extent that the Liquidating Trustee first receives adequate written notice of a transfer or change of address, properly executed by the holder or its authorized agent.

**8.3    Means of Cash Payment.**  Cash payments made pursuant to this Plan shall be U.S. funds, by check drawn on a domestic bank, or by wire transfer from a domestic bank, which the Liquidating Trustee deems appropriate.

**8.4    Delivery of Distributions.**  Distributions to holders shall be made to the addresses set forth in the proof of Claim filed by such holders (or the last known address of such Holder if no Proof of Claim is filed, or if the Liquidating Trustee has been notified, in writing, of a change of address).  If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Liquidating Trustee is notified, in writing, of such holder's then current address, at which time Distributions shall be made to such holder without interest.

**8.5    Right of Offset.**  Pursuant to Bankruptcy Code § 553 or applicable non-bankruptcy law, the Liquidating Trustee may setoff against any Allowed Claim or Equity Interest and the Distributions to be made pursuant hereto on account of such Claim or Equity Interest (before any Distribution is made on account of such Claim or Equity Interest), the claims, equity interests, rights, and causes of action of any nature that the Estate or the Liquidating Trustee, as applicable, may hold against the Holder of such Allowed Claim or Equity Interest; *provided, however*, that neither the failure to effect such a setoff nor the Allowance of any Claim or Equity Interest hereunder shall constitute a waiver or release by the Trustee or the Liquidating Trustee, as applicable, of any such claims, equity interests, rights, and causes of action that the Debtor or the Liquidating Trustee, as applicable, may possess against such Holder, except as specifically provided herein.  No Entity shall retain the right of offset, set off, recoupment, or any other right, Claim, Lien or Secured Claim as against the Estate or the Liquidating Trust, as applicable, under Bankruptcy Code § 553 or otherwise unless such Entity is the Holder of a Claim that has been timely filed under Bankruptcy Code § 502 and such Claim is an Allowed Claim.

## ARTICLE IX.

**9.1    The Effective Date.**  The Effective Date shall be the first Business Day that is at least one (1) full Business Day after the Confirmation Order becomes a Final Order and all the conditions precedent to the Effective Date described below have been satisfied or waived.

**9.2    Conditions Precedent to Effective Date.**  The following are conditions precedent to the occurrence of the Effective Date, each of which must be (a) satisfied or (b) waived in accordance with Article IX of this Plan.

(a)    **Confirmation Order.**  The Confirmation Order, in form and substance acceptable to Debtor, Main Street, and the Committee, as the same may have been modified in accordance herewith, must have become a Final Order.

(b)    **Authorizations.**  Debtor shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions or documents, if any, that are determined by Debtor to be necessary to implement this Plan.

(c)    **Execution of Plan Supplement Documents.**  Debtor shall have received all executed Plan Supplement Documents, if any, which shall be held in trust by Debtor pending the Effective Date.

(d)    **Execution of the Trust Agreement.**  The Trust Agreement shall have been executed.

**9.3    Waiver of Conditions.**  The conditions precedent to the Effective Date may be waived or modified by an act of Debtor pursuant to a writing signed by Debtor and approved by the Bankruptcy Court.

**9.4    Effects of Confirmation.**

(a)    **Revesting of Assets.**  On the Effective Date, Property of the Estate shall vest in the Liquidating Trust.  As of the Effective Date, all Property of the Estate or the Liquidating Trust shall be free and clear of all Liens, Claims interests and other encumbrances of Holders of Claims, except as provided in this Plan, and except that property abandoned pursuant to the terms of this Plan or by Order of the Bankruptcy Court.

(b)    Nothing in this Plan shall (a) constitute a determination that the proceeds, if any, of the D&O Policies or D&O Coverage are property of the Estate or (b) impair, abridge,, or otherwise alter the scope, extent, validity, enforceability or binding effect of any D&O Policies (or D&O Coverage), and all such D&O Policies or D&O Coverage shall remain valid, binding and enforceable against the respective insurance carriers notwithstanding the confirmation of the Plan. Additionally, and for the avoidance of doubt, the rights of any Entity to collect proceeds from the D&O Policies are not impaired, abridged or otherwise altered  by the Plan.

(c)    **Findings by the Bankruptcy Court.**  In addition to the findings set forth in Bankruptcy Code § 1129(a), the Bankruptcy Court shall make such findings of fact and conclusions of law that are reasonable and necessary to

34

effectuate the provisions of this Plan. Such findings and conclusions may include, but are not limited to:

i. Debtor and Liquidating Trustee are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with this Plan.

ii. Any claim, right, cause, or cause of action of Debtor, the Estate, or Liquidating Trust, or any holder of any Claim, that is waived or deemed waived pursuant to this Plan or pursuant to the Disclosure Statement, shall have been waived and released upon the Effective Date, subject to the reservations or right and avoidance power set forth in this Plan.

iii. Cause exists to abrogate the stay of the effect of the Confirmation Order in accordance with Bankruptcy Rule 3020(e).

iv. Debtor proposed this Plan in good faith.

v. The appointment of Dwayne M. Murray as the Liquidating Trustee by the Bankruptcy Court.

(c) **Approval of Plan Supplement.** Confirmation shall constitute approval of any Plan Supplement and such transactions as are provided by the exhibits comprising such Plan Supplement.

## ARTICLE X.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon Debtor and any and all holders of Claims against or Equity Interests in Debtor (regardless of whether such Claims or Equity Interests are deemed to have accepted or rejected this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in this Plan, each Entity acquiring property under this Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts with Debtor. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to this Plan regardless of whether any holder of a Claim or debt has voted on this Plan.

Subject to the limitations contained in this Plan, Debtor reserves the right to modify this Plan as to immaterial terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code §

1127 and Bankruptcy Rule 3019 and those restrictions on modifications set forth in this Plan, Debtor expressly reserve their rights to immaterially alter, amend, or modify this Plan one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to immaterially alter, amend, or modify this Plan, or remedy any defect or omission, or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Plan.

Entry of a Confirmation Order shall mean that all immaterial modifications or amendments to this Plan occurring after the solicitation thereof and prior to the Confirmation Date are approved pursuant to Bankruptcy Code § 1127(a) and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

## ARTICLE XI.

Under 28 U.S.C. §§ 157(b) and 1334, and Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

a. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

b. Hear and determine all Fee Claims; *provided*, *however*, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of Liquidating Trustee shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

c. Effectuate performance of and payments under the provisions of this Plan;

d. Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Bankruptcy Case;

e. Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan or Confirmation Order and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Confirmation Order;

f. Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan or the

36

Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan or the Confirmation Order;

g.    Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

h.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

i.    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

j.    Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

k.    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Case;

l.    Recover all assets of Debtor, Trust Assets and Property of the Estate, wherever located;

m.    Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505, and 1146;

n.    Hear and determine all disputes involving the existence, nature, or scope of Debtor's discharge;

o.    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

p.    Enter a final decree closing the Bankruptcy Case.

## ARTICLE XII.

12.1    <u>Severability of Provisions of this Plan.</u>  If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of Debtor or any other party-in-interest, shall have the power to alter and interpret such term or provision to

make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.2    Successors and Assigns.**    The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person.

**12.3    Notices.**    Any notice, request, or demand required or permitted to be made or provided to or upon Debtor or Liquidating Trustee under this Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, or (iv) first class mail, and (c) deemed to have been duly given or made when actually delivered or when actually received, addressed as follows:

with a copy to Debtor's counsel:

> STEWART ROBBINS & BROWN, LLC
> Attn: P. Douglas Stewart, Jr.
> P.O. Box 2348
> Baton Rouge, LA 70821-2348
> Facsimile: (225) 709-9467
> E-mail: dstewart@stewartrobbins.com

Debtor or Liquidating Trustee may change such address(es) by notice to all holders of Claims and Equity Interests given in the same manner.

**12.4    Compromise and Settlement.**    Pursuant to Bankruptcy Rule 9019(a), Debtor or Liquidating Trustee may compromise and settle various Claims against them or claims they may have against other Persons. Debtor expressly reserve the right (and except as otherwise provided herein, with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and claims that they may have against other Persons up to and including the Effective Date. After the Effective Date, such right shall transfer to Liquidating Trustee and no Bankruptcy Court approval of any such action, compromise or settlement shall be required.

**12.5** <u>Section 1146 Exemption.</u>  Pursuant to Bankruptcy Code § 1146(c), any transfers of property pursuant hereto, which shall by Confirmation be deemed transfers pursuant to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**12.5** <u>Post-Confirmation Reporting Requirements.</u>  After Confirmation, Debtor or Liquidating Trustee shall continue to report to the United States Trustee on or before the fifteenth (15th) day of each calendar quarter the total of all disbursements for the prior calendar quarter up to the date an order is entered either granting final decree, converting the case to Chapter 7 or dismissing the case. Prior to entry of an order of final decree, the debtor will report the total disbursements up to the date of the decree insofar as not previously reported. However, nothing herein shall be construed as a waiver of the right of Debtor or Liquidating Trustee to request that, after the Effective Date, the Bankruptcy Case be administratively closed.

## ARTICLE XIII.

**13.1** <u>Effect of Confirmation.</u>  11 U.S.C. § 1141 SHALL APPLY IN FULL. PURSUANT TO BANKRUPTCY CODE § 1141(D)(3), THE DEBTOR SHALL NOT BE ENTITLED TO A DISCHARGE.

**13.2** <u>Automatic Stay.</u>  The automatic stay of Bankruptcy Code § 362 shall continue in effect until the Effective Date.

**13.3** <u>INJUNCTION.</u>  THERE SHALL BE AN INJUNCTION TO THE FULL EXTENT ALLOWED UNDER BANKRUPTCY CODE §§ 1141, AND ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS OR OTHER PERSONS BOUND BY THE PROVISIONS OF THE PLAN SHALL BE ENJOINED FROM PURSUING ANY ACTION ON ACCOUNT OF OR RELATED TO ANY CLAIM OR EQUITY INTEREST THROUGH ANY CONDUCT OR PROCEEDING WHATSOEVER, WITH RESPECT TO SUCH HOLDER'S CLAIMS OR WITH RESPECT TO ANY RELEASED, ENJOINED OR EXCULPATED CLAIMS AGAINST THE DEBTOR OR LIQUIDATING TRUSTEE OR PERSONS SUBJECT TO ANY RELEASE OR EXCULPATION CONTAINED IN THE PLAN.  ALL CLAIMS AGAINST, EQUITY INTERESTS IN, AND ANY OTHER RIGHT OF RECOVERY FROM THE DEBTOR ARE HEREBY CHANNELED TO THE LIQUIDATING TRUST, WHICH IS AND SHALL BE THE SOLE SOURCE OF RECOVERY IN ACCORDANCE WITH THE PLAN.

**13.4**   **Exculpation.**  This Plan does not affect an exculpation of any Persons, save and except the officers and directors of the Debtor employed or serving in such capacity as of the Effective Date, and any professionals authorized to be employed by the Debtor under Order[s] of the Bankruptcy Court, the Committee, and its members and any professionals authorized to be employed by the Committee under Order[s] of the Bankruptcy Court, and, Main Street and with respect to entity constituting Main Street, such entities' predecessors, successors and assigns, subsidiaries, and Affiliates, and its and their current and former officers, directors, principals, shareholders and their Affiliates, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees (the "Protected Persons").  The Protected Persons shall not have or incur any liability to any Person or Entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection with or related to the Debtors, the Chapter 11 Cases, or the Estates, including, but not limited to, (i) formulating, preparing, disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); or (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respects such Protected Persons shall be entitled to rely in good faith upon the advice of counsel.

**13.5**   **Limited Release.**

(a)  For purposes of this Section, the term "Released Parties" means collectively and in each case in their capacity as such: (i) the Creditors' Committee and each of its members, but solely in their capacities as such, and not individually; (ii) Main Street Capital Corporation; (iii) Main Street Capital II, LP; (iv) HMS Income Fund, Inc.; and (v) with respect to each of the foregoing entities in clauses (i) through (iv), such entities' predecessors, successors and assigns, subsidiaries, and Affiliates, and its and their current and former officers, directors, principals, shareholders and their Affiliates, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees.

(b)  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE RELEASED PARTIES ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTOR, ITS ESTATE AND ANY PERSON OR ENTITY SEEKING TO EXERCISE THE RIGHTS OF THE DEBTOR OR ITS ESTATE AND ITS

PROPERTY, INCLUDING THE POST-CONFIRMATION TRUSTEE AND THE POST-CONFIRMATION TRUST, AS THE SAME WILL BE CONSTITUTED ON THE EFFECTIVE DATE (AND EACH SUCH RELEASED PARTY SHALL BE RELEASED BY THE DEBTOR AND ITS ESTATE AND ITS PROPERTY) FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, LIEN, MORTGAGE OR ENCUMBRANCE CHALLENGES, CLAIM CHALLENGES, PRIORITY CHALLENGES, OTHER RIGHTS, ANY ACTION TAKEN IN ACCORDANCE WITH OR PURSUANT TO ANY ACTION DIRECTED OR AUTHORIZED BY ANY ORDER OF THE BANKRUPTCY COURT AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, AVOIDANCE ACTIONS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED DIRECTLY OR INDIRECTLY, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, ITS ESTATE OR ITS AFFILIATES, THE CONDUCT OF THE DEBTOR'S BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THIS PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR, ITS ESTATE OR ITS AFFILIATES, ON THE ONE HAND, AND ANY RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE OF THE PLAN.

For the avoidance of doubt, however, no third-person legally responsible with the Debtor for taxes owed to LDR or IRS is released from any liability they may have to LDR or IRS in relation to the Allowed Priority Tax Claims post-Confirmation. Such third-parties shall remain liable for any unpaid amounts to the same extent to which Louisiana law may impose personal liability upon them. Immediately upon the effective date, LDR and the IRS shall have the right immediately and without prior Bankruptcy Court approval to enforce collection of

its unpaid Allowed Priority Tax Claims from any person legally responsible with the Debtor and may do so using any means available under applicable law.

Further, notwithstanding the foregoing injunction (section 13.3), exculpation (13.4), and limited release (13.5) provisions of this Plan, or any other provision of the Plan, neither the Plan, the Confirmation Order nor any documents executed or filed in connection with the Plan, the Confirmation Order or the Bankruptcy Case, shall release, impair or affect any claims or Causes of Action or judgments (including with respect to any D&O Claims and D&O Coverage) of Brown & Root against Gregory Nelson or against any other person(s), including any insurer(s), who are or may be liable with or for him or on his behalf, including but not limited to rights and claims and Causes of Action (including with respect to any D&O Claims and D&O Coverage) arising from that certain Judgment dated May 10, 2017 rendered in *Brown & Root Industrial Services v. Gregory Nelson*, Suit No. 656,549 on the docket of the 19th Judicial District Court for East Baton Rouge Parish, LA, or the rights, claims and Causes of Action (including with respect to any D&O Claims and D & O Coverage) that have been or may be asserted in that certain litigation presently pending in the United States District Court for the Middle District of Louisiana styled *Brown & Root Industrial Services v. Gregory Nelson*, Case No. 17-00361-BAJ-EWD, all of which rights, claims and Causes of Action (including with respect to any D&O Claims and D&O Coverage) are fully retained by and reserved to Brown & Root.

Further, notwithstanding the foregoing injunction (section 13.3), exculpation (13.4), and limited release (13.5) provisions of this Plan, or any other provision of the Plan, neither the Plan, the Confirmation Order nor any documents executed or filed in connection with the Plan, the Confirmation Order or the Bankruptcy Case, shall release, impair or affect any claims or defenses that Gregory Nelson or any other person(s), including any insurer(s), who are or may be liable with or for him or on his behalf (the "Nelson Parties"), may have against Brown & Root and/or any claims asserted by Brown & Root, including but not limited to defenses in or otherwise relating to pending litigation between Nelson and Brown & Root, which includes a certain default Judgment dated May 10, 2017, in *Brown & Root Industrial Services v. Gregory Nelson*, Suit No. 656,549 on the docket of the 19th Judicial District Court for East Baton Rouge Parish, LA, and which is presently pending in the United States District Court for the Middle District of Louisiana styled *Brown & Root Industrial Services v. Gregory Nelson*, Case No. 17-00361-BAJ-EWD, all of which rights, claims and defenses are fully retained by and reserved to the Nelson Parties, without prejudice from any action, event, or filing in the Bankruptcy Case.

**13.6   Default.** In the event that Debtor or Liquidating Trustee fail to make any payment required under this Plan when due, or perform any obligation required to be performed under this Plan timely, the aggrieved party may place Debtor or Liquidating Trustee in default if Debtor or Liquidating Trustee fail to

42

cure such payment or perform such obligation within ten (10) business days of written notification of such failure to perform or failure to pay. Upon default, such aggrieved party may exercise any remedy to which it may be entitled under this Plan, the Bankruptcy Code, or non-bankruptcy law to recover its Allowed Claim without further action required by the Bankruptcy Court.

13.7 **Binding Effect.** This Plan shall be binding upon and inure to the benefit of Debtor, all present and former holders of Claims against and Equity Interests in Debtor, their respective successors and assigns, and all other parties-in-interest in the Bankruptcy Case.

13.8 **Revocation or Withdrawal.** Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date or substantial consummation and to file subsequent plans. If Debtor revoke or withdraw this Plan, or if Confirmation or substantial consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests), assumption and assignment or rejection of Executory Contracts effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Equity Interests; (b) prejudice in any manner the rights of Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by Debtor or any other entity

13.9 **Plan Supplement.** Any and all forms of promissory notes and other documents necessary to implement this Plan shall be submitted to the Bankruptcy Court for approval within fourteen (14) days after Confirmation, upon notice to affected holders of Claims.

### # # #

Baton Rouge, Louisiana, U.S.A.
Dated:  Wednesday, November 29, 2017

**STEWART ROBBINS & BROWN, LLC**

/s/ P. Douglas Stewart, Jr.
P. Douglas Stewart, Jr. (LA 24661)
Brandon A. Brown (LA 24627)
Ryan J. Richmond (LA 30688)
One American Place
301 Main Street, Suite 1640
Baton Rouge, LA 70801
Telephone: (225) 231-9998
Facsimile: (225) 709-9467
dstewart@stewartrobbins.com
bbrown@stewartrobbins.com
rrichmond@stewartrobbins.com

*Attorneys for Debtor and
Debtor-in-Possession*

           AND

**TAYLOR, PORTER, BROOKS & PHILLIPS
LLP**

/s/ Michael A. Crawford
Michael A. Crawford (# 22315)
450 Laurel Street (70801)
8th Floor

Post Office Box 2471
Baton Rouge, Louisiana 70821]

*Attorneys for the Official Committee of
Unsecured Creditors of East West
Copolymer, LLC*

44