**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| EAST WEST COPOLYMER, LLC | ) | Case No. 17-10327 |
| | ) | |
| Debtor. | ) | |

## MOTION TO APPROVE STIPULATION REGARDING
## SETOFF RIGHTS, CARVE OUT FOR THE LIQUIDATING TRUST AND CASH
## COLLATERAL

**NOW INTO COURT**, through undersigned counsel, comes Dwayne Murray, the

Liquidating Trustee, who hereby files this *Motion to Approve Stipulation Regarding Setoff*

*Rights, Carve Out for the Liquidating Trust and Cash Collateral* ("Motion"). In support thereof,

Movant respectfully states as follows:

### BACKGROUND

1.      On April 7, 2017, East West Copolymer, LLC ("Debtor") filed for bankruptcy

relief under chapter 11 of the Bankruptcy Code.

2.      On November 29, 2017, the Court confirmed the *Chapter 11 Plan of Liquidation*

*Proposed by East West Copolymer, LLC and the Official Committee of Unsecured Creditors*

*Dated October 20, 2017 and Immaterially Modified as of November 29, 2017* [Docket No. 343]

(the "Plan")[1].

3.      The Plan went effective on December 14, 2017.

4.      Consistent with the Plan and pursuant to the confirmation order, Dwayne Murray

was appointed the Liquidating Trustee.  Among other things, the Plan established Main Street

Capital's secured rights to certain collateral, including cash collateral held in the Debtor in

---

[1] Capitalized terms not defined herein are as defined in the Plan.

Possession bank account (Comerica Account No. ending in 2414)(the "Account") at Comerica Bank ("Comerica").

5.    At the Debtor's request, Comerica issued a letter of credit (No. OSB1780T) in the amount of $105,000 in favor of Great American Insurance Company ("GAIC") as beneficiary on or about May 6, 2014. A copy of the contract is attached hereto as Exhibit 1.

6.    This court entered an Agreed Order on Joint Motion to Approve Stipulation Regarding Proceeds of Letter of Credit on August 9, 2018 [Docket No. 499](the "Agreed Order"); which, among other things, authorized GAIC to draw upon the letter of credit but retain only $15,000 and turn over the remaining $90,000 to the Liquidating Trust.

7.    In accordance with that Agreed Order, GAIC has presented Comerica with a draw on the letter of credit and Comerica has or soon will honor its contractual obligations. In turn, by honoring its contractual obligations, Comerica has asserted a security interest in the amounts contained in the Account to cover the face amount of the obligation ($105,000) plus certain contractual rights for reimbursement of fees and expenses.

8.    Further, the Liquidating Trust and Main Street Capital have been in discussions about the balance of funds turned over by GAIC and those remaining after satisfaction of Comerica's setoff rights. Those discussions have led to the proposed Stipulation attached hereto as Exhibit 2.

## RELIEF REQUESTED

9.    By this Motion, Movant is requesting that the Court approve the Stipulation attached as Exhibit 2. The Liquidating Trustee refers the Court to Exhibit 2 for a complete recital of the terms thereof. However, a summary of the Stipulation is as follows:

    a.    Comerica shall be entitled, subject to court order approving the Stipulation, to retain $108,000 of the funds currently held in the Account to reimburse it for

honoring the $105,000 draw on the letter of credit to GAIC, $550 in fees related to the letter of credit draw and reasonable attorneys' fees of $2,450;

b.   The Liquidating Trust shall receive the balance of the Account funds, namely $39,380.20, of which MSC agrees to carve out $2,880.20 for the Liquidating Trust to reimburse for the time and expense of negotiating, filing and obtaining court approval of the Stipulation and the prior Agreed Order. The Account balance of $36,500, along with the aforementioned $90,000 that was subject to the Agreed Order, shall be paid by the Liquidating Trust over to MSC in accordance with MSC's interest in cash collateral;

c.   Other than with respect to the enforcement of the terms of the Stipulation between the Liquidating Trustee, Comerica and MSC (collectively the "Parties") or any obligations memorialized in the confirmed Plan, any and all Claims or Causes of Action, if any exist, by any of the Parties against the other, are fully released and compromised; and

d.   The Parties shall cooperate in jointly seeking approval of this Stipulation and agreement; and

e.   This Court shall retain exclusive jurisdiction to enforce the terms of this Stipulation.

10.   The relief requested herein is in the best interests of the Liquidating Trust and the creditors. By approving the Stipulation, the Liquidating Trust resolves any potential litigation in connection with the competing secured claims and provides at least a small recovery for the Liquidating Trust's administration.

11.    The Liquidating Trustee believes the proposed Stipulation, which provides $2,880.20 to the Liquidating Trust when otherwise none of these funds would be available to it, is fair and reasonable and should be approved.

**WHEREFORE**, the Liquidating Trustee respectfully requests that this Honorable Court approve the Stipulation and grant such further and other relief as the Court deems just and proper.

This 20th day of September, 2018.

Respectfully submitted,

/s/ Michael A. Crawford
Michael A. Crawford (# 22315)
**Taylor, Porter, Brooks & Phillips, LLC**
450 Laurel Street (70801)
8th Floor
Post Office Box 2471
Baton Rouge, Louisiana 70821]

**Counsel for Liquidating Trustee**

**Comerica Bank**

## Standby Letter of Credit Application and Agreement and Pledge Agreement

The undersigned hereby requests Comerica Bank ("Bank") to issue an irrevocable standby letter of credit ("Credit") and notify the beneficiary directly or through an advising bank by:

a. ☒ Forwarding the Credit directly to the beneficiary via courier, or
b. ☐ Forwarding the Credit to an advising bank via ☐ courier ☐ S.W.I.F.T.

If the preceding information is not completed, Bank will forward the Credit directly to the beneficiary via courier.

**DOCUMENT TRACKING**
No. 39129

### Section A

| | |
|---|---|
| Advising Bank (if applicable): | Branch No. or S.W.I.F.T. Address: |
| (Complete Name) | |
| (Complete Street Address – P.O. Box Prohibited) | OSB1780T |
| For Account of (Account Party): EAST WEST COPOLYMER & RUBBER LLC (Complete Name) | Att. Susan Deviller (Attn) |
| 77047   3955 SCENIC HWY – BATON ROUGE – LA – 70805 (Complete Street Address – P.O. Box Prohibited) | |
| In Favor of (Beneficiary): Great American Insurance Company (Complete Name) | Attention: John Daugherty (Attn) |
| 49 East Fourth Street, 4th Floor South , Cincinnati, OH 45202 (Complete Street Address – P.O. Box Prohibited) | |

### Section B

| | |
|---|---|
| Amount and Currency: $ 105,000.00 (Amount in Figures and Words) | US DOLLAR (Currency) |
| Expiration Date: 04/17/2015 (Spell out date – month, day, year) | |

### Section C

**Auto Extension Provisions** (Select only one option. If no option is selected, the default selection is "Not Automatically Extendable"):
☐ NOT AUTOMATICALLY EXTENDABLE
☒ AUTO EXTENDABLE:
　Number of Days Notice to Beneficiary Prior to Expiration Date (e.g., 15, 30, 45) (If not specified, default is 30 days): 30 DAYS NOTICE
　How often (e.g., yearly, semi-yearly): ____
　Final Expiration Date: ____

**Drawing and Presentation Options** (Select only one option):
☒ Partial Drawings/Multiple Presentations Permitted (multiple presentations for less than full amount)
☐ Partial Drawings/Multiple Presentations Prohibited (only one presentation and for full amount)
☐ Partial Drawing Permitted/Multiple Presentation Prohibited (only one presentation may be made but it may be for less than the full amount available)

**Documents Required for Drawing under the Credit** (Select only one option):
☐ NO DOCUMENTS REQUIRED FOR DRAWING. It is understood by the Applicant that the beneficiary will not be required to provide any documents as a reason for the drawing.
☒ DOCUMENTS REQUIRED FOR DRAWING (Select only one option):
　☒ Issue the Credit substantially in the form attached hereto as Exhibit A. (Applicant must sign the attached Exhibit to acknowledge and approve the proposed form of the Credit, provided, however, issuance of the Credit and the final form and terms of the Credit shall be at Bank's sole discretion).
　☐ A statement signed by the beneficiary with the following wording: "____".
　If additional documents are required, please specify in Section D below.

REGARDLESS OF WHETHER OR NOT DOCUMENTS ARE REQUIRED, THE BANK, AT ITS SOLE OPTION, MAY REQUIRE THE ORIGINAL OF THE CREDIT, AND ALL AMENDMENTS THERETO, AND A DRAFT OR OTHER DEMAND FOR PAYMENT BE DELIVERED OR PRESENTED TO THE BANK AT THE TIME OF A DRAWING UNDER THE CREDIT.

### Section D

☐ Other Conditions, Instructions and Requests: ____

Standby Letter of Credit Application and Agreement and Pledge Agreement (Rev. 8/2013)　　　Page 1 of 8

MDR.4047152 5/2/14



**EXHIBIT 1**



## Standby Letter of Credit Application and Agreement and Pledge Agreement

The undersigned hereby requests Comerica Bank ("Bank") to issue an irrevocable standby letter of credit ("Credit") and notify the beneficiary directly or through an advising bank by:

a. ☒ Forwarding the Credit directly to the beneficiary via courier; or
b. ☐ Forwarding the Credit to an advising bank via ☐ courier ☐ S.W.I.F.T.

If the preceding information is not completed, Bank will forward the Credit directly to the beneficiary via courier.

DOCUMENT TRACKING
NO. ___39129___

### Section A

| Advising Bank (if applicable): | | Branch No. or S.W.I.F.T. Address: |
|---|---|---|
| | (Complete Name) | |
| | (Complete Street Address – P.O. Box Prohibited) | OSB1780J |
| **For Account of (Account Party):** 77028 | EAST WEST COPOLYMER & RUBBER LLC (Complete Name) | Att: Susan Devillier (Attn:) |
| | 5955 SCENIC HWY - BATON ROUGE - LA - 70805 (Complete Street Address – P.O. Box Prohibited) | |
| **In Favor of (Beneficiary):** | Great American Insurance Company (Complete Name) | Attention: John Daugherty (Attn:) |
| | 49 East Fourth Street, 4th Floor South ,Cincinnati, OH 45202 (Complete Street Address - P.O. Box Prohibited) | |

### Section B

| Amount and Currency: | $ 105,000.00 (Amount in Figures and Words) | US DOLLAR (Currency) |
|---|---|---|
| Expiration Date: | 04/17/2015 (Spell out date – month, day, year) | |

### Section C

Auto Extension Provisions (Select only one option. If no option is selected, the default selection is "Not Automatically Extendable"):

☐ NOT AUTOMATICALLY EXTENDABLE

☒ AUTO EXTENDABLE:

Number of Days Notice to Beneficiary Prior to Expiration Date (e.g., 15, 30, 45) (If not specified, default is 30 days): 30 DAYS NOTICE

How often (e.g., yearly, semi-yearly): _____

Final Expiration Date: _____

Drawing and Presentation Options (Select only one option):

☒ Partial Drawings/Multiple Presentations Permitted (multiple presentations for less than full amount)

☐ Partial Drawings/Multiple Presentations Prohibited (only one presentation and for full amount)

☐ Partial Drawing Permitted/Multiple Presentation Prohibited (only one presentation may be made but it may be for less than the full amount available)

Documents Required for Drawing under the Credit (Select only one option):

☐ NO DOCUMENTS REQUIRED FOR DRAWING. It is understood by the Applicant that the beneficiary will not be required to provide any documents or a reason for the drawing.

☒ DOCUMENTS REQUIRED FOR DRAWING (Select only one option):

☒ Issue the Credit substantially in the form attached hereto as Exhibit A. (Applicant must sign the attached Exhibit to acknowledge and approve the proposed form of the Credit; provided, however, issuance of the Credit and the final form and terms of the Credit shall be at Bank's sole discretion).

☐ A statement signed by the beneficiary with the following wording: "_____".

If additional documents are required, please specify in Section D below.

REGARDLESS OF WHETHER OR NOT DOCUMENTS ARE REQUIRED, THE BANK, AT ITS SOLE OPTION, MAY REQUIRE THE ORIGINAL OF THE CREDIT, AND ALL AMENDMENTS THERETO, AND A DRAFT OR OTHER DEMAND FOR PAYMENT BE DELIVERED OR PRESENTED TO THE BANK AT THE TIME OF A DRAWING UNDER THE CREDIT.

*(stamped vertically: 2014 APR 29 PM 4 17)*

### Section D

☐ Other Conditions, Instructions and Requests: _____

**TERMS AND CONDITIONS.** In consideration of the issuance of the Credit by Bank, Applicant hereby agrees with Bank as follows:

1. **Definitions.** As used in this Agreement, the following terms shall have the following respective meanings:

   (a) "Account Party" means the party or parties identified as the "Account Party" in the Application, whose name(s) will be identified in the Credit. The Account Party may be, but is not required to be, the same as the Applicant.

   (b) "Applicant" means the undersigned party or parties identified and signing this Application and Agreement as such, and who will be responsible as herein provided.

   (c) "Application" and "Agreement" each means this Standby Letter of Credit Application and Agreement for an irrevocable standby letter of credit to be issued by Bank, as the same may be amended or modified from time to time in accordance with the provisions hereof.

   (d) "Bank" means Comerica Bank.

   (e) "Change in Law" means the occurrence, after the date hereof, of any of the following: (i) the adoption or introduction of, or any change in any applicable law, treaty, rule or regulation (whether domestic or foreign) now or hereafter in effect and whether or not applicable to Bank on such date, or (ii) any change in interpretation, administration or implementation thereof of any such law, treaty, rule or regulation by any Governmental Authority, or (iii) the issuance, making or implementation by any Governmental Authority of any interpretation, administration, request, regulation, guideline, or directive (whether or not having the force of law), including any risk-based capital guidelines. For purposes of this definition, (x) a change in law, treaty, rule, regulation, interpretation, administration or implementation shall include, without limitation, any change made or which becomes effective on the basis of a law, treaty, rule, regulation, interpretation administration or implementation then in force, the effective date of which change is delayed by the terms of such law, treaty, rule, regulation, interpretation, administration or implementation, and (y) the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203, H.R. 4173) and all requests, rules, regulations, guidelines, interpretations or directives promulgated thereunder or issued in connection therewith shall be deemed to be a "Change in Law", regardless of the date enacted, adopted, issued or promulgated, whether before or after the date hereof, and (z) all requests, rules, guidelines or directives promulgated by the Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States regulatory authorities, in each case pursuant to Basel III, or any updates, revisions or changes thereto, shall each be deemed to be a "Change in Law", regardless of the date enacted, adopted, issued or implemented.

   (f) "Collateral" is defined in paragraph 13 of this Agreement.

   (g) "Commercial Code" is defined in paragraph 9 of this Agreement.

   (h) "Correspondent Bank" is defined in paragraph 19 of this Agreement.

   (i) "Credit" means the irrevocable standby letter of credit issued by Bank, at its option, pursuant to this Application and Agreement, as such letter of credit may be modified or amended from time to time.

   (j) "Designated Office" means Bank's office designated in the Bank's Designated Office section at the end of this Agreement, or such other office of Bank as Bank may designate from time to time by written notice to Applicant.

   (k) "Dollars" and the sign "$" shall mean lawful money of the United States of America.

   (l) "Event of Default" is defined in paragraph 14 of this Agreement.

   (m) "Governing Law" means the laws of the State of California, Michigan or Texas, respectively, as indicated in the Bank's Designated Office section at the end of this Agreement, subject to the terms of this Agreement, or as otherwise determined pursuant to and in accordance with the terms of this Agreement.

   (n) "Governing Rules" means the rules governing letter of credit practice as specified in the Credit, which shall be either the International Standby Practices 1998, International Chamber of Commerce ("ICC") Publication No. 590, and any revisions thereof approved by the ICC and adhered to by Bank; or the Uniform Customs and Practice for Documentary Credits, 1993 Revision-ICC Publication No. 500 or 2007 Revision-ICC Publication No. 600, and, in either case, any revisions thereof approved by the ICC and adhered to by Bank.

   (o) "Governmental Authority" means the government of the United States of America or any other nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including, without limitation, any supranational bodies such as the European Union or the European Central Bank).

   (p) "Instrument" means any time or sight draft or other electronic or written demand for payment drawn under or in connection with any Credit.

   (q) "Obligations" means all liabilities and obligations of Applicant to Bank, whether direct or indirect, absolute or contingent, joint or several, due or to become due, now existing or hereafter arising, and howsoever evidenced, including, without limit, all liabilities and obligations of Applicant at any time arising or existing under or pursuant to this Agreement or otherwise in respect of the Credit.

   (r) "Prime Rate" means the rate of interest established by Bank from time to time as its prime rate, which may not necessarily be the lowest interest rate charged by Bank to its borrowers at any time.

   (s) "Request" is defined in paragraph 11 of this Agreement.

   (t) "Taxes" means all present and future taxes, levies, duties, imposts, assessments, charges and fees (including interest and penalties) of any nature charged or imposed by any government or other governmental or taxing authority in connection with the Credit, any Instrument or any transaction contemplated thereby.

2. **Issuance of Credit.** Applicant hereby authorizes Bank to comply with Applicant's request to issue the Credit, and any amendments thereto, in each case, for Applicant's account and risk, subject to and in accordance with the terms of this Agreement; provided, however, and notwithstanding anything in this Agreement or elsewhere to the contrary: (a) the issuance of the Credit, or any amendment to the Credit, will be at Bank's sole and absolute discretion; and (b) the terms and conditions of the Credit and any such amendment must be acceptable to Bank, in its sole and absolute discretion. In the event that Bank, in its discretion, elects to issue the Credit with terms or conditions that differ materially or substantially from those set forth in this Application, Bank will provide notice of such decision to Applicant, by telephone or otherwise, and Bank will either, at its discretion, (i) provide a specimen copy of the Credit as so modified to Applicant for its review, in which case, Applicant will promptly review the specimen copy and notify Bank of any errors, omissions, discrepancies or irregularities and as to whether Applicant approves or disapproves of the issuance of the Credit in such modified form; or (ii) review the proposed modifications with Applicant by telephone or other means, and if deemed necessary by Bank, obtain Applicant's consent to such modifications. Bank may, in its sole discretion, decline to issue the modified Credit until it receives written authorization from Applicant for the issuance of the Credit as so modified. To the extent applicable, Applicant will promptly examine the copy of the Credit (and any amendments thereto) sent to it by Bank, and all documents and instruments delivered to it from time to time by Bank, and, in the event of any claim of noncompliance with Applicant's instructions or other irregularity, will immediately notify Bank thereof in writing. Applicant being conclusively deemed to have waived any such claim against Bank and its correspondents unless such notice is given within seven (7) banking days of Bank sending such copy of the Credit and/or the applicable documents to Applicant.

3. **Reimbursement Obligations.** (a) Applicant will reimburse Bank, at its Designated Office, in immediately available funds, the amount required to pay each instrument drawn or presented, or purporting to be drawn or presented, under the Credit (including all Taxes, charges, costs and expenses paid or incurred by Bank in connection therewith), together with interest thereon from the date of payment by Bank of the Instrument to the date of reimbursement at a per annum rate equal to three percent (3%) above the Prime Rate, such reimbursement to be made on demand. Interest shall be calculated on the basis of a 360 day year and shall be assessed for the actual number of days elapsed; and effect shall be given to any change in the interest rate resulting from a change in the Prime Rate on the date of each such change in the Prime Rate.

   (b) Bank may accept or pay any Instrument presented to it or a nominated bank under the Credit in accordance with the terms of the Credit, regardless of when drawn and whether or not negotiated, if the Instrument and any other documents required under the terms of the Credit are presented or received on or before the expiration date of the Credit and otherwise appear on their face to substantially comply with the terms of the Credit, without any further investigation or inquiry on the part of Bank and regardless of any notice or information to the contrary, and Applicant shall be obligated to reimburse Bank for such Instrument and such other amounts as are required under and in accordance with the terms of this Agreement.

(c) Regardless of the currency of the Instrument or the Credit, each reimbursement and/or payment of any judgment shall be in Dollars. If Bank receives currency other than Dollars and/or receives reimbursement at a place other than the Designated Office, Bank may, in its sole discretion and in accordance with Bank's own banking procedures, convert the currency received by it into Dollars at the most favorable spot exchange rate determined by Bank to be available to it at the relevant time and transfer the proceeds to the Designated Office. If, after any such conversion and transfer, the amount of Dollars received by Bank is less than the actual amount due hereunder, then Applicant shall remain liable for such deficiency, together with interest on such amount from the date demanded until payment in full thereof at the rate and on the terms set forth above. If, for any reason or cause, on the date of reimbursement or settlement or payment of judgment there is no rate of exchange generally current for effecting such currency conversions and transfers, the Applicant will reimburse the Bank on demand in an amount in Dollars equivalent to the Bank's actual cost of settlement of its obligation under the Instrument or otherwise in respect of the Credit as of the time Bank shall make such settlement, with interest from the date of settlement to the date of reimbursement at the rate and on the terms set forth above. Applicant will comply with all governmental exchange regulations now or hereafter applicable to the Credit or instruments or payments related thereto and will pay the Bank, on demand, in Dollars, such amount as the Bank may be required to expend on account of such regulations, including, without limitation, all applicable Taxes.

(d) All payments to be made by Applicant under this Agreement shall be without deduction, setoff or counterclaim.

(e) Bank is authorized to charge any and all of Applicant's deposit accounts and other accounts with Bank for all reimbursements and other payments required under or pursuant to the terms of this Agreement.

**4.    Delivery of Documents.** Notwithstanding anything in this Agreement or elsewhere to the contrary, in no event will Bank be obligated to deliver to Applicant any instrument or other documents presented or delivered to Bank at any time under or in connection with the Credit prior to (a) payment of the Instrument, and (b) Applicant's payment in full of all reimbursement obligations and other amounts owing by Applicant to Bank hereunder or otherwise in respect of the Credit. If Bank delivers copies of any instrument or documents to Applicant, Bank will be under no obligation to await instructions or authorizations from Applicant in determining whether to make any payment on or in respect of such Instrument or the Credit.

**5.    Unconditional Obligations.** The obligation of Applicant to reimburse Bank for all amounts paid or required to be paid under any instrument or otherwise in respect of the Credit will be absolute, unconditional and irrevocable and not subject to any qualification, condition or exception, including, without limitation, (a) any lack of validity or enforceability of the Credit or any related documentation or transaction; (b) any amendment, modification, waiver, consent, or any substitution, exchange or release of or failure to perfect any interest in any collateral or security with respect to any property or documents related in any way to the Credit; (c) the existence of any claim, setoff, defense or other right which Applicant or any Account Party may have at any time against any beneficiary or transferee of the Credit (or any person(s) for whom any such beneficiary or transferee may be acting), Bank, or any other person, whether in connection with any documentation relating to the Credit, any transactions contemplated by this Agreement, or any unrelated transactions; (d) any instrument or other document presented under the Credit proving to be forged, fraudulent, invalid or insufficient in any respect or any statement in any of them being untrue or inaccurate in any respect; (e) payment by Bank to any beneficiary or transferee under the Credit against presentation of any instrument or other document which does not strictly comply with the terms of the Credit, including failure of any instrument or other document to bear any reference or adequate reference to the Credit; (f) any failure, omission, or delay on the part of Bank, or any party to any of the transactions or documents relating to the Credit or any transactions contemplated by this Agreement, to enforce or assert any right or remedy conferred on Bank or any such party, or any other acts or omissions on the part of Bank or any such other party; or (g) any other event or circumstance that would, in the absence of this paragraph, result in the release or discharge, by operation of law or otherwise, of Applicant from the observance or performance of any of its liabilities or obligations under this Agreement.

**6.    Interest, Fees, Costs and Expenses.** (a) Applicant will pay Bank such fees and commission with respect to the Credit and any related instruments as has been agreed to by Applicant and Bank. Applicant will further pay Bank the reasonable fees and expenses of Bank in connection with the Credit and any such instruments according to Bank's standard practice as in effect from time to time. Amounts due hereunder include, without limitation, any Taxes, fees, costs or expenses incurred by Bank in connection with any amounts paid by Bank under the Credit that are not reimbursed by Applicant in accordance with the terms of this Agreement. There shall be no refund or decrease, and Applicant shall not be entitled to any return, of any fee, commission or other amount paid or owed to Bank in the event that the Credit is drawn upon, used, reduced, amended, terminated, canceled or otherwise modified prior to its expiration date.

(b) If any Taxes or amounts in respect thereof must be deducted or withheld from any payment made or to be made by Applicant hereunder (including payment of any additional amounts payable under this paragraph 6(b)), Applicant shall pay such additional amounts as may be necessary to ensure that Bank receives a net amount equal to the full amount which it would have received had such payment not been subject to such Taxes. Within thirty (30) days after the date of any payment of Taxes under this paragraph 6, Applicant shall furnish to Bank the original or a certified copy of a receipt evidencing payment thereof.

(c) If any Change in Law (i) shall subject Bank to any tax, duty or other charge with respect to this Agreement, the Credit or any of the Obligations of Applicant to Bank hereunder or in respect of the Credit, or shall change the basis of taxation of payments to Bank of any other amounts due under this Agreement or otherwise in respect of the Credit (except for changes in the rate of tax on the overall net income of Bank by the jurisdiction in which Bank's principal executive office is located); or (ii) shall impose, modify or deem applicable any reserve (including, without limitation, any imposed by the Board of Governors of the Federal Reserve System), special deposit, insurance premium or other similar requirement against assets of, deposits with or for the account of, or credit issued or extended by Bank; or (iii) shall impose on Bank or the foreign exchange and interbank markets any other condition affecting this Agreement, the Credit or any of the Obligations of Applicant to Bank hereunder or in respect of the Credit; or (iv) affects or would affect the amount of capital required or expected to be maintained by Bank (or any corporation controlling Bank) as a result of or based upon the existence of any obligations of Bank in respect of issuing or maintaining the Credit, and the result of any of the foregoing is to increase the cost to Bank of issuing or maintaining the Credit, or to reduce the amount of any sum received or receivable by Bank in respect of issuing or maintaining the Credit, or has the effect of reducing the rate of return on Bank's (or such controlling corporation's) capital to a level below that which Bank (or such controlling corporation) could have achieved but for such circumstances (taking into consideration its policies with respect to capital adequacy), in any such case, by an amount deemed by Bank to be material, then Applicant shall pay to Bank, within fifteen (15) days of Applicant's receipt of written notice from Bank demanding such compensation, such additional amounts which shall be sufficient to compensate Bank for any such increased cost, reduction in any sum received or receivable by Bank, increased capital and/or reduced rate of return. A certificate as to such increased cost or reduction incurred by Bank as a result of any event mentioned in clause (i) through (iv) above, submitted by Bank to Applicant shall be conclusive, absent manifest error, as to the amount thereof.

(d) Applicant will pay or reimburse Bank, on demand, any and all costs and expenses (including, without limit, court costs, legal expenses and reasonable attorneys' fees, whether inside or outside counsel is used, whether or not suit is instituted, and, if suit is instituted, whether at the trial court level, appellate level, in a bankruptcy, probate or administrative proceeding or otherwise) incurred in connection with the preparation, execution, delivery, amendment, administration, and performance of this Agreement, the Credit and any related documents, or incurred by Bank in connection with the enforcement of this Agreement and such other documents which may be delivered in connection with this Agreement and Applicant's liabilities and obligations hereunder, or in connection with any action or proceeding relating to a court order, injunction or other process or decree restraining or seeking to restrain Bank from paying any instrument or any amount under the Credit, or incurred in any other matter or proceeding relating to this Agreement or the Credit.

(e) If any provision of this Agreement or the Credit would obligate the Applicant to make any payment of interest or other amount payable to the Bank in an amount or calculated at a rate which would be prohibited by law, then notwithstanding that provision, that amount or rate shall be deemed to have been adjusted with retroactive effect to the maximum amount or rate of interest, as the case may be, as would not be so prohibited by law.

7.  **Indemnification.** (a) Applicant agrees to indemnify and hold Bank and its correspondents harmless from and against any and all claims, damages, losses, liabilities, costs or expenses whatsoever which Bank or any of its correspondents may incur (or which may be claimed against Bank or any of its correspondents by any person) by reason of, or in connection with, the execution, delivery, issuance or transfer of, or payment or failure to pay under, the Credit, or by reason of, or in connection with, any other matters arising under this Agreement or the Credit, or any of the transactions contemplated hereby or thereby; provided, however, Applicant shall not be required to indemnify Bank or its correspondents for any claims, damages, losses, liabilities, costs or expenses to the extent, but only to the extent, caused by Bank's or such correspondent's willful misconduct or gross negligence.

(b) Applicant agrees that if Applicant at any time has any rights or remedies available to it against the beneficiary(ies) or other person(s) in connection with the Credit with respect to which Bank is alleged to be liable, it will be a condition of the assertion of any such liability by Applicant against Bank that Applicant shall contemporaneously and diligently assert and pursue all rights and remedies as to the alleged liability that Applicant may have against such beneficiary(ies) or other person(s).

8.  **Applicant's Assumption of Risks.** Applicant assumes all risks of the acts or omissions of any attorney, consultant, officer, employee or agent of the Applicant (each an "Agent") and of any beneficiary or transferee of the Credit, or any party purporting to represent or otherwise act for or on behalf of any such beneficiary or transferee, with respect to its use of the Credit. Neither Bank nor any of its officers, directors, employees or agents shall be liable or responsible for: (a) the use which may be made of the Credit or for any acts or omissions of any Agent or any beneficiary, transferee or other party in connection therewith; (b) the validity, sufficiency or genuineness of documents, or of any endorsements thereof, even if such documents should in fact prove to be in any or all respects invalid, insufficient, fraudulent or forged; (c) payment by Bank made against presentation of documents which substantially comply with the terms of the Credit; or (d) any other circumstances whatsoever in making or failing to make payment under the Credit. In furtherance and not in limitation of the foregoing, Bank may accept documents that appear on their face to be in order, without responsibility for further investigation, regardless of any notice or information to the contrary. Applicant shall indemnify and hold Bank and its correspondents harmless from and against any and all claims, damages, losses, liabilities, costs or expenses whatsoever which any of them may incur (or which may be claimed against any of them) by reason of, or in connection with, the occurrence or existence of any one or more of the contingencies referred to in the preceding clauses of this paragraph, except to the extent, but only to the extent, caused by Bank's or such correspondent's willful misconduct or gross negligence. Further, the occurrence or existence of any one or more of such contingencies shall not affect, impair or prevent the vesting of any of Bank's rights or powers hereunder or any of Applicant's obligation to make reimbursement and other payments in accordance with the terms hereof.

9.  **Governing Law and Rules.** (a) This Application and Agreement and all rights, obligations and liabilities arising hereunder, shall be governed by, subject to and construed in accordance with the applicable Governing Law, including, without limitation, the Uniform Commercial Code as adopted by the state promulgating the Governing Law, as from time to time amended and enforced (the "Commercial Code"), without regard to any conflict of law principles. This Agreement shall be further subject to the Governing Rules (a copy of which is available upon request) and, in the event any provision of the Governing Rules is or is construed to vary from or be in conflict with any provision of the Commercial Code or other Governing Law, the Governing Rules shall prevail. Applicant acknowledges and agrees that the Credit may be governed by, subject to and construed in accordance with governing laws that may differ from the Governing Laws provided in this Application and Agreement, in which case, this Agreement shall remain governed by and subject to the Governing Law and the Governing Rules provided herein and the Credit shall be governed by and subject to the applicable law and Governing Rules (if applicable) provided for in the Credit.

(b) Applicant acknowledges and agrees that Bank may, in its sole discretion, upon written notice to Applicant prior to issuance of the Credit, designate a Designated Office of Bank, and consequently, a Governing Law, which differs from that designated by Applicant in the Bank's Designated Office section at the end of this Agreement, in which case, the Designated Office and Governing Law with respect to this Application and Agreement shall be that so designated in writing by Bank. In the event that Applicant does not designate a Designated Office, as provided below, the Designated Office and Governing Law shall be determined by Bank, in its sole discretion, and Applicant acknowledges and agrees to be bound by such determination.

10. **Compliance with Laws and Regulations.** Applicant shall comply with all applicable laws and regulations (foreign or domestic) relating to the Credit, any instruments or other documents relating thereto, and any of the transactions contemplated thereby. Bank shall have no obligation to process any transactions or honor any instruments or documents that, in Bank's determination, do not comply with applicable laws and regulations.

11. **Requests to Amend Credit, Waiver of Discrepancies.** (a) Applicant authorizes Bank to comply with Applicant's request to amend the Credit or to waive any discrepancies in an instrument or other documents presented or required under the terms of the Credit, in each case, for Applicant's account and risk, upon a request communicated in writing to Bank (each a "Request"), subject to the following: (i) Requests will communicated in writing to Bank, which may be by hand delivery, mail or overnight courier service, computer, facsimile transmission, S.W.I.F.T. or other means acceptable to Bank, and shall be made on behalf of Applicant only by those persons authorized by Applicant, and Bank may continue to rely on such authorizations until such time that it receives written notice to the contrary from Applicant. In no event shall Bank be obligated to verify the identity of any persons so authorized or any persons purporting to communicate a Request, beyond the use of the authorized name, code identification or other means of verification, if any, established by Bank; (ii) if frequent Requests are to be made, Bank may, but shall not be obligated to, assign a unique code number or word and require that such code be used by Applicant (and if such a code number or word is established, all further Requests shall refer to such code); (iii) Bank shall not be liable for any losses, costs, expenses, liabilities or damages that Applicant may incur as a result of Bank's compliance with, or otherwise acting in reliance on, a Request in accordance with this Agreement, and Applicant will indemnify and hold Bank harmless from and against all such losses, costs, expenses, liabilities and damages, except to the extent, but only to the extent, that they arise as a result of Bank's gross negligence or willful misconduct; (iv) Bank will not be liable for any delays in complying with any Request, nor for any delays caused by others to whom Bank may transmit such Request either at Applicant's direction or otherwise, and Bank will not be required to comply with Requests on the day on which Requests are received unless Bank has agreed to do so and Applicant has caused such Request to be received before the time Bank has specified to comply with such Request; (v) all Requests shall be subject to the terms of this Agreement and any other written or electronic agreement entered into between Bank and Applicant in connection with the Credit or any transaction relating to such Request; and (vi) any notice or communication of a change of address sent by a beneficiary to Bank shall not require a Request or the consent of Applicant, and (A) Applicant hereby authorizes Bank to send to the beneficiary(ies) an amendment or a revised form of the Credit with the beneficiary's new address, and (B) if the beneficiary does not communicate the beneficiary's new address before presentation or uses its current or previous address in the documents presented, Applicant hereby agrees that such variation in address shall not be deemed a discrepancy and such variation in address shall not be the sole basis of Bank refusing to honor or comply with an otherwise complying presentation. Bank may record any Request made by telephone and any other telephonic communications between Applicant and Bank regarding the Credit. Notwithstanding anything to the contrary contained in this Agreement, Bank shall not be obligated to, and shall have no liability for failing to, comply with any Requests.

(b) Bank may, in its sole discretion and without any obligation to do so, approach Applicant for a waiver of any discrepancies in any instrument or other documents presented or required under the terms of the Credit and request that Applicant authorize payment of such instrument despite any such deficiencies. Any such action will be solely for Applicant's risk, benefit and convenience. Bank's request for a waiver in one instance will not require Bank to approach Applicant for waivers of discrepancies in any other instances, and whether or not a course of dealing has been established. Notwithstanding anything set forth herein or elsewhere to the contrary, Applicant's waiver of any discrepancies will not in any instance obligate Bank to waive any such discrepancies, pay any instrument(s) presented as to the Credit, or approach Applicant at any time for a waiver of future discrepancies.

12. **Extensions of Credit.** Bank shall have the sole and absolute right to extend or not extend the Credit. If the Credit provides for automatic extension, Applicant's request to not extend the Credit must be received by Bank, in writing, at its Designated Office at least sixty (60) days prior to the last day specified in the Credit by which Bank must give notice of its intent not to extend the expiration date of the Credit. If Applicant fails to provide Bank with actual written notice of Applicant's request for Bank not to extend the Credit at least sixty (60) days prior to the last day specified in the Credit by which Bank must give notice of its intent not to extend the Credit, then

Applicant shall be deemed to have irrevocably authorized the extension of the Credit, and Applicant shall continue to be liable under the terms of this Agreement. Notwithstanding Applicant's request to extend the Credit or failure to timely give Bank actual notice of Applicant's desire to not extend the Credit, any decision whether to extend the Credit shall be in Bank's sole and absolute discretion. Applicant acknowledges that in the event the beneficiary of the Credit, or any employee, successor, assignee, representative, trustee or agent of the beneficiary, is notified that Bank has elected not to extend the Credit, the terms of the Credit may allow it to be drawn upon, and Applicant shall be bound by the reimbursement and other obligations under this Agreement, and Applicant shall irrevocably waive all claims, causes of action, and defenses that Applicant may have against Bank for electing not to extend the Credit

13.  **Collateral.** (a) As security for the payment and performance of all of the Obligations, Applicant hereby assigns, pledges and grants to Bank a continuing first priority security interest in and lien upon, and the right of possession and disposal to, all of the following property and assets of Applicant, wherever located (collectively the "Collateral"): (i) account number _____ maintained by Applicant with Bank; (ii) all replacements, substitutions, renewals thereof; (iii) all interest accruing thereon; and (iv) all products and proceeds (cash or non-cash proceeds) of the foregoing. So long as the Collateral is subject to this Agreement, Applicant shall have no right to withdraw any of the foregoing Collateral without the prior written consent of Bank. To the extent applicable, the foregoing is in addition to any other liens, security interests, mortgages and/or other rights and interests that may at any time be granted to or in favor of Bank to secure all or any part of the Obligations.

(b) In addition to the foregoing, all money, checks, instruments, deposit accounts, funds, goods, documents (including, without limit, negotiable documents), investment property and all other property of every kind or nature (except real property which is not a fixture) of Applicant which are now or later in possession or control of Bank, or as to which Bank now or later controls possession by documents or otherwise, or are in transit to or set apart for Bank or any of its agents or correspondents for any purpose, shall secure the Obligations, and Applicant hereby grants Bank a security interest in the same for the purpose of securing such Obligations.

(c) Prior to the maturity (if any) of any Collateral held by Bank pursuant hereto, Applicant and Bank shall agree upon a security or instrument similar in form, quality, and substance to the original Collateral in which the proceeds of the Collateral can be reinvested on maturity. Upon maturity of the Collateral in accordance with its terms, or in the event the Collateral otherwise becomes payable during the term of this Agreement, such maturing Collateral may be presented for payment, exchange, or otherwise marketed by Bank on behalf of Applicant and the proceeds therefrom used to purchase the security or instrument agreed to by Applicant and Bank in accordance with the immediately preceding sentence. If no agreement has been made, such proceeds shall be placed into an interest bearing account offered by the Bank until such time as an agreement as to the security replacing the original Collateral can be reached. Bank may retain any such successor collateral and the proceeds therefrom as Collateral in accordance with the terms of this Agreement.

(d) Applicant authorizes Bank to file such financing statements and take such other actions as Bank determines from time to time may be necessary or appropriate to create, perfect, preserve or protect the security interests and other interests of Bank created hereby, all at the expense of Applicant. Applicant shall execute and/or deliver unto Bank such documents, instruments and agreements as may be requested by Bank to create, perfect, preserve or protect the security interests and other interests of Bank created hereby.

(e) The pledge and grant of a security interest in the Collateral hereunder remains in effect for the term of this Agreement, notwithstanding any release by Bank of any other collateral in connection with the Obligations or any other agreement in effect between the Bank and the Applicant, now or hereafter arising.

(f) Applicant represents and warrants to and covenants with Bank that: (i) the Collateral is owned by Applicant free and clear of any security interests, liens, encumbrances, options or other restrictions created by Applicant, other than to or in favor of Bank; (ii) Applicant has full power and authority to create a first lien on the Collateral in favor of Bank and no disability or contractual obligation exists that would prohibit Applicant from pledging the Collateral pursuant to this Agreement, and Applicant will not assign, create or permit to exist any other claim to, lien or encumbrance upon, or security interest in any of the Collateral, other than to or in favor of Bank; (iii) the Collateral is not the subject of any present or threatened suit, action, arbitration, administrative or other proceeding, and Applicant knows of no reasonable grounds for the institution of any such proceedings; and (iv) Applicant shall not transfer, encumber, dispose of, withdraw, or otherwise direct the payment of any proceeds, interest, or amounts payable with respect to the Collateral for so long as it is subject to this Agreement.

14.  **Events of Default.** The occurrence or existence of any of the following conditions or events shall constitute an "Event of Default" under this Agreement: (a) if Applicant or any guarantor under a guaranty of all or any part of the indebtedness of Applicant to Bank (a "guarantor") fail(s) to pay any indebtedness or obligations owing to Bank, when due, whether by maturity, acceleration, upon demand or otherwise, and whether under this Agreement or otherwise; (b) if Applicant or any guarantor fail(s) to perform or comply with any of the terms or provisions of this Agreement or any other agreement between Applicant or any guarantor and Bank; (c) if any warranty or representation made by Applicant or any guarantor to Bank shall be untrue or incomplete in any material respect; (d) if there is any termination, notice of termination, or breach of any guaranty, pledge, collateral assignment or subordination agreement relating to all or any part of the indebtedness or obligations of Applicant to Bank; (e) if there is any failure by Applicant or any guarantor to pay, when due, any of its indebtedness (other than to the Bank) or in the observance or performance of any term, covenant or condition in any document evidencing, securing or relating to such indebtedness; (f) if Applicant or any guarantor become(s) insolvent or the subject of a voluntary or involuntary proceeding in bankruptcy, or a reorganization, arrangement or creditor composition proceeding, or make(s) a general assignment for the benefit of creditors, (if a business entity) cease(s) doing business as a going concern, (if a natural person) die(s) or become(s) incompetent, (if a partnership) dissolve(s) or any general partner of it dies, becomes incompetent or becomes the subject of a bankruptcy proceeding, or (if a corporation or a limited liability company) is the subject of a dissolution, merger or consolidation; (g) if any governmental authority, or any court at the instance of any governmental authority, shall take possession of any substantial part of the property of Applicant or any guarantor or shall assume control over the affairs or operations of Applicant or any guarantor; (h) if there is filed or issued a levy or writ of attachment or garnishment or other like judicial process upon Applicant or any guarantor or any of their respective property or assets, including, without limit, any accounts of Applicant or any guarantor with the Bank, or (i) if Bank shall in good faith deem itself insecure at any time, deeming the prospect of payment or performance of any of the liabilities or obligations of Applicant to Bank to be impaired.

15.  **Remedies.** (a) Upon the occurrence of any Event of Default, Bank may, at its option and without prior notice to Applicant, declare any or all of the Obligations of Applicant to Bank (whether under this Agreement or otherwise) to be immediately due and payable (notwithstanding any provisions contained in the evidence of it to the contrary), sell or liquidate all or any portion of any collateral (including, without limit, the Collateral securing any such Obligations of Applicant to Bank, and exercise any and all rights and remedies available to Bank, whether under this Agreement or any other agreement, at law, in equity, or otherwise, including, without limitation, all rights and remedies available to Bank under the Commercial Code. Without limiting the generality of the foregoing, upon the occurrence of any Event of Default, Bank may exercise in respect of the Collateral any and all rights of a secured party under the Commercial Code and any other applicable law, and may, without notice except as otherwise required, sell such Collateral, or any part thereof, in one or more parcels at public or private sale, at any of Bank's offices or elsewhere, for cash, on credit or for future delivery, and upon such terms as Bank may deem commercially reasonable. After the disposal of any of the Collateral, Bank may deduct all reasonable legal and other expenses and attorneys' fees for protecting its interests and enforcing its remedies under this Application and Agreement and shall apply the residue of the proceeds to, or hold as a reserve against, the Obligations in such manner as Bank in its sole discretion shall determine, and shall pay the balance, if any, to Applicant or otherwise, in accordance with applicable law. Applicant will pay to Bank, on demand, all costs and expenses (including, without limitation, attorneys' fees and legal expenses) related or incidental to the repossession, custody, preservation, protection, sale or preparation for sale, collection from or other realization upon any such Collateral, or related or incidental to the establishment, preservation or enforcement of Bank's rights and remedies in respect of such Collateral.

(b) In addition to any other rights and remedies available to Bank, upon the occurrence of any Event of Default hereunder, Applicant shall, upon the written request of Bank, deliver to Bank cash collateral in an amount equal to the aggregate undrawn or available amount of the Credit at such time, which sum shall be held by Bank as cash collateral to secure the payment and performance of all obligations of Applicant to Bank under or pursuant to this Agreement or otherwise in respect of the Credit, and Applicant hereby pledges and grants unto Bank a continuing first priority security interest in any and all such sums so delivered to Bank.

(c) All money, checks, deposit accounts, funds, property and documents of Applicant with or in Bank's possession or any of Bank's affiliates, agents or correspondents at any time, whether before or after any Event of Default, shall secure the Obligations of Applicant hereunder, and Applicant hereby grants Bank a security interest in the same for the purpose of securing such Obligations. Upon the occurrence and at any time during the continuance of any Event of Default hereunder, Bank may at any time and from time to time, without notice to Applicant (any requirement for such notice being expressly waived by Applicant), set off and apply against any and all of the Obligations of Applicant to Bank any and all deposits (general or special, time or demand, provisional or final) at any time held and any other indebtedness at any time owing by Bank to or for the credit or the account of Applicant and any property of Applicant from time to time in possession of Bank, irrespective of whether or not Bank shall have made any demand hereunder and although such obligations may be contingent and unmatured. The rights of Bank under this paragraph are in addition to other rights and remedies (including, without limitation, other rights of setoff) which Bank may otherwise have.

16. **Consent to Jurisdiction.** Applicant irrevocably submits to the nonexclusive jurisdiction of any United States Federal Court or state court of competent jurisdiction sitting in the state in which the Governing Law is promulgated in any action or proceeding arising out of or relating to this Agreement or the Credit, and Applicant agrees that all claims in respect of such action or proceeding may be heard and determined in any such court. Applicant irrevocably waives any objection to the laying of venue of any such action or proceeding in any of the above described courts. Applicant agrees that service of process in any such legal proceeding may be made, and shall be conclusively deemed sufficient and adequate, by mailing copies thereof (by registered or certified mail, if practicable), postage prepaid, or by teletransmission to Applicant at its address set forth herein or such other address of which Bank shall be notified in writing, in which event, service shall be deemed complete upon the filing with the court of a copy of the process mailed or sent and an affidavit attesting the mailing or sending. Applicant agrees that nothing herein shall affect Bank's right to effect service of process in any other manner permitted by law.

17. **No Waiver of Bank's Rights.** Bank shall not be deemed to have waived any of its rights hereunder, unless Bank or its authorized agents shall have signed such waiver in writing and delivered such waiver to Applicant at Applicant's address as set forth herein. No such waiver, unless expressly as stated therein, shall be effective as to any transaction which occurs subsequent to the date of such waiver, nor as to any continuance of a breach after such waiver. BANK SHALL NOT BE BOUND BY ANY ALTERATION, MODIFICATION, ADDITION TO OR DELETION OF ANY OF THE PROVISIONS OF THIS AGREEMENT UNLESS EXPRESSLY AGREED TO IN WRITING BY BANK AND DELIVERED TO APPLICANT AT APPLICANT'S ADDRESS AS SET FORTH HEREIN.

18. **Applicant's Waivers.** Applicant waives presentment, demand, protest, notice of protest, notice of default or dishonor, notice of payment and nonpayment, notice of demand or intent to demand, notice of acceleration or intent to accelerate, and all other notices and agrees that no extension nor indulgence to Applicant (or any of them) or release, substitution or nonenforcement of any security, or release or substitution of any Applicant, any guarantor or any other party, whether with or without notice, shall affect the obligations of any of the undersigned. Applicant waives all defenses or right to discharge available under Section 3-605 of the Commercial Code or other applicable law and waives all other suretyship defenses or right to discharge.

19. **Correspondent Bank.** (a) If Applicant has submitted this Application to a bank other than Comerica Bank (such other bank is herein called a "Correspondent Bank") requesting that the Correspondent Bank, on behalf of Applicant, deliver this Application and Agreement to Bank requesting that the Bank issue the Credit, then the following provisions shall apply: (i) the term "Bank" shall mean such Correspondent Bank and Bank, both collectively and individually so that either the Correspondent Bank or Bank may exercise all the rights, privileges and powers conferred upon Bank under this Agreement; and (ii) any collateral given as security for Applicant's obligations under this Application and Agreement, and any deposit balances of Applicant with the Correspondent Bank, shall stand as security and collateral for the Credit and for any of the Correspondent Bank's obligations under or pursuant to this Application and Agreement or otherwise in respect of the Credit.

(b) If the issuance of the Credit is requested by or through a Correspondent Bank in accordance with the terms hereof, then the Correspondent Bank, by its execution of this Application and Agreement: (i) requests and authorizes Bank to issue the Credit in Bank's name or through a correspondent; (ii) authorizes Bank and/or its correspondent(s) to pay Instruments drawn against the Credit as specified in this Application and Agreement and to exercise all rights, powers and privileges conferred by this Application and Agreement, without reference to the Correspondent Bank; (iii) agrees to reimburse Bank and make payments to Bank in amount, time and manner as required of Applicant under this Agreement, whether or not the Correspondent Bank has received payment from Applicant; (iv) assigns to Bank as security all its rights, including rights of payment and to security, under this Agreement and agrees to deliver to Bank, upon demand, such additional security as Bank may request, and also agrees to give Bank a lien on all its property, including deposit balances now or hereafter in Bank's possession for the amount of any liability of the Correspondent Bank to Bank hereunder; and (v) agrees that if Correspondent Bank fails to make any payment or provide any security as requested, all of Correspondent Bank's obligations and liabilities to Bank shall immediately, without notice, become due and payable at Bank's sole option. Correspondent Bank acknowledges and agrees that Bank shall have the right to demand or seek reimbursement and other payments required under this Agreement directly from the Correspondent Bank, without any obligation or requirement that Bank demand or seek reimbursement or payment from Applicant or any other person(s) or otherwise exercise any of Bank's rights or remedies against Applicant or such other person(s).

20. **Successors and Assigns.** This Agreement and the obligations hereunder shall bind the successors and assigns of Applicant, and all rights, benefits and privileges conferred on Bank shall be extended to, conferred upon, and may be enforced by Bank's successors and assigns; provided, however, that neither this Agreement nor any rights or obligations hereunder may be assigned by Applicant without Bank's prior written consent, which consent may be granted or withheld in Bank's sole discretion.

21. **Notices.** Except as otherwise provided herein, any notice from Bank to Applicant, shall be deemed effective upon: (a) if hand delivered, upon actual receipt thereof by Applicant, (b) if mailed or by overnight courier service, when mailed or delivered to such courier service, postage paid, addressed to Applicant at its address set forth herein or such other address of which Bank shall be notified in writing at Bank's Designated Office, or (c) if by computer, facsimile or other electronic means acceptable to Bank, the sending or transmission thereof and Bank's receipt of confirmation that the notice was transmitted. Any notice to Bank must be in writing, must be sent to Bank's Designated Office, and shall only be deemed given when actually received by Bank.

22. **Severability.** Whenever possible each provision of this Application and Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Application and Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Application and Agreement.

23. **Participations, Assignments; Disclosure.** Applicant agrees that Bank has the right to sell, assign, or grant participations or any interest in, the Credit or any or all of the liabilities, obligations or indebtedness of Applicant to Bank, and that, in connection therewith, but without limiting its ability to make other disclosures to the full extent allowable, Bank may disclose all documents and information which Bank now or later has relating to Applicant, the Credit or such liabilities, obligations or indebtedness. Applicant agrees that Bank may provide information relating to this Agreement or relating to Applicant to the Bank's parent, affiliates, subsidiaries and service providers.

24. **Headings.** Headings in this Agreement are included for convenience of reference only and shall not constitute part of this Agreement and shall in no way modify or affect any of the terms or provisions of this Agreement.

25. **Joint and Several Obligations.** If this Application and Agreement is executed by more than one Applicant, each Applicant agrees to be bound by the terms and conditions of this Agreement (as Applicant) and each Applicant agrees that each shall be jointly and severally liable for all indebtedness and obligations arising under or pursuant to this Agreement.

26. **COMPLETE AGREEMENT; NO ORAL AGREEMENTS.** THIS AGREEMENT AND ANY REQUESTS ACCEPTED BY BANK CONSTITUTE THE ENTIRE AGREEMENT AND UNDERSTANDING OF THE PARTIES REGARDING ITS SUBJECT MATTER, SUPERSEDES ALL PRIOR AGREEMENTS REGARDING ITS SUBJECT MATTER, AND, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, CAN ONLY BE MODIFIED IN WRITING SIGNED BY THE AUTHORIZED REPRESENTATIVE OF APPLICANT AND BANK. THIS AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES, AND THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. APPLICANT ACKNOWLEDGES AND AGREES THAT THERE ARE NO CONTRARY AGREEMENTS, ORAL OR WRITTEN, ESTABLISHING A TERM OF THIS AGREEMENT.

27. **WAIVER OF JURY TRIAL.** APPLICANT AND BANK (BY ITS ACCEPTANCE OF THIS AGREEMENT) ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED UNDER CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT, WAIVE ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS AGREEMENT.

28. **Credit Facility Adjustment.** If Bank issues the Credit, it is being issued pursuant to a credit facility(ies) extended by Bank to Applicant, and any amount available to Applicant under such credit facility shall be reduced by an amount equal to the amount of the Credit.

29. **Electronic Notices, Confidential Information.** Applicant acknowledges and agrees that if Applicant forwards notices or otherwise communicates with Bank via email, the internet or other electronic means, such notices or communications may not be secure, and Applicant assumes all risks associated with the use of such means of communication, including, without limitation, unauthorized access to such information by third parties; and Applicant indemnifies and holds Bank harmless from and against all liabilities, damages, losses, costs and expenses of any nature whatsoever arising or incurred as a result of Applicant's use of any such means of communication. Applicant is advised that it should not use browser e-mail to send notices or communications to Bank which contain unencrypted confidential information, such as passwords, account numbers, Social Security numbers or tax identification numbers.

30. **Survival.** All covenants, representations and warranties made in this Agreement shall continue in full force and effect so long as any Obligations remain outstanding. The obligations of Applicant to indemnify Bank with respect to the expenses, damages, losses, costs and liabilities described in paragraph 7 shall survive until all applicable statute of limitations periods with respect to actions that may be brought against Bank have run.

31. **Term.** This Agreement shall remain in effect so long as any Obligation, whether or not contingent or unliquidated, now or hereafter arising, remains in existence.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK
Signature(s) appear on next page

In consideration of Bank issuing the Credit and for other consideration, the receipt and adequacy of which is hereby acknowledged, Applicant(s) agree(s) to be bound by this Agreement, including but not limited to the payment obligations therein set forth.

This Application and Agreement has been entered into this _____ day of _____, 20_____.

**APPLICANT(S):**

| Applicant Name | | | Applicant Name | | |
|---|---|---|---|---|---|
| EAST WEST COPOLYMER & RUBBER LLC | | | | | |
| Authorized Signature | | | Authorized Signature | | |
| Authorized Signature, Title | | | Authorized Signature, Title | | |
| CELSO GONCALVES - CFO | | | | | |
| Contact Name | | | Contact Name | | |
| SUSAN DEVILLIER | | | | | |
| Telephone Number | | | Telephone Number | | |
| 225-267-3713 | | | | | |
| Street Address | | | Street Address | | |
| 5955 SCENIC HWY | | | | | |
| City | State | Zip | City | State | Zip |
| BATON ROUGE | LA | 70805 | | | |

**CORRESPONDENT BANK:** (This section must be completed by the Correspondent Bank if Application is being submitted through another Bank.)

| Correspondent Bank Name | | | | |
|---|---|---|---|---|
| Authorized Signature | | Authorized Signature, Title | | |
| Street Address | | City | State | Zip |

We certify that all Section 326 of the USA Patriot Act Customer Identification Program (CIP) requirements have been completed on the Credit Applicant.

**BANK'S DESIGNATED OFFICE:**

Designate only one. The Bank's Designated Office should be the respective office of Bank to which this Application and Agreement is directed. Please contact your Bank representative if there are any questions regarding the appropriate Designated Office. If the Applicant does not select a Designated Office, as provided below, the Designated Office, and the applicable Governing Law, shall be determined by Bank in its sole discretion.

☐ California (California law governs)
   Comerica Bank
   International Trade Services
   2321 Rosecrans Ave., 5th Floor
   El Segundo, CA 90245

☐ Michigan (Michigan law governs)
   Comerica Bank
   International Trade Services
   411 West Lafayette, MC 3341
   Detroit, MI 48226

☐ Texas (Texas law governs)
   Comerica Bank
   International Trade Services
   6260 East Mockingbird, 2nd Floor
   Dallas, TX 75214

**Comerica Bank**

International Trade Finance
## Lending Officer Approval Form

The Lending Officer Approval Form (LOAF) is designed for Lending Officers to provide required information and approval to the International Trade Services (ITS) group for the set-up and processing of global trade solutions [Letters of Credit (LCs) – Export, Import, Standby, and International Collections].

**INSTRUCTIONS:** Check the Request Type and complete the required sections noted. Type, select or check the required data in the gray-shaded form fields, using the "Tab" key or your mouse to navigate to and from form fields. All applicable sections must be completed with the required information. Handwritten forms will not be accepted. For questions or assistance with the LOAF, please contact your designated ITS – Trade Operations Support group: California Market (Jim Richert, 310.297.2855), Michigan Market (Kim Wood, 313.222.7486) and Texas Market (Kwoi Young, 214.826.5972).

| REQUEST TYPE: (Check only one) | A ☒ Import/Standby LCs – Issuance | Complete Sections 1, 2, 4, 5, 6, 9 [and 7, 8, Attachment A for Participation Sold, if applicable] |
|---|---|---|
| | B ☐ Import/Standby LCs – Amendment | Complete Sections 1, 3, 4, 9 [and 6C, if standalone LC and 8, if applicable] |
| | C ☐ Export LCs | Complete Sections 1, 4, 9 [and 8, if applicable] |
| | D ☐ International Collections | Complete Sections 1, 4, 9 [and 8, if applicable] |
| | E ☐ Pricing Change | Complete Sections 1, 4, 9 [and 8, if applicable] |
| | F ☐ Facility Renewal | Complete Sections 1, 6, 9 [and 8, if applicable] |
| | G ☐ Customer (Applicant) Name Change | Complete Sections 1, 9 [and 8, if applicable] |

### SECTION 1. CUSTOMER (APPLICANT) INFORMATION

| Customer Name (Legal Entity Name): | East West Copolymer & Rubber LLC    77047 | Street Address (P.O. Box Prohibited): | 5955 Scenic Highway Baton Rouge, LA 70805 |
|---|---|---|---|
| Contact Name: | Celso Goncalves | Contact Telephone No.: | 225-267-3446 |
| Contact Fax No.: | 225-368-7650 | Contact E-Mail: | celso.goncalves@ewcopolymer.com |
| Tax ID: | 45-4490061 | Primary Industry Code: | SIC [ 2822 ] NAICS [ 3252121 ] |
| Obligor Type: * | Select or 420 | Foreign Risk Customer: | ☐ Yes ☒ No | Country of Foreign Risk: |
| Borrower Rating (1–23): | 14 | Borrower Rating Date: | 02/13/14 (mm/dd/yyyy) | Fed Code: 599 |
| Facility Rating (A1, A2, B-G): | C | Facility Rating Date: | 02/13/14 (mm/dd/yyyy) | Facility Rating Applies to all LCs: ☒ Yes ☐ No |

* Refer to the LOAF Instructions for a description of each Obligor Type.

### SECTION 2. LETTER OF CREDIT INFORMATION

| LC Type (Check all that apply): * | ☐ Commercial LC | ☒ Financial Standby LC (1) | ☐ Performance Standby LC |
|---|---|---|---|
| | LC is a Participation: ☐ Yes ☒ No | | If Yes, complete Section A below |
| | (1) Supports State or Municipal Sponsored Bond Issue (e.g., IRB): ☐ Yes ☐ No | | If Yes, complete Section D below |

| LC Amount/Tolerance: | Amount $105,000.00  Currency US  Tolerance (if applicable) ☐ ±   or ☐ "About" or "Approximately" |
|---|---|

(± Number or Percent. Applies to Credit Amount and Merchandise Quantity)

| Expiration Date of LC: | 04/17/2015 (mm/dd/yyyy) |
|---|---|
| Underlying Purpose of LC: | Workers Comp Insurance |

| Option(s): | Commercial LCs: | ☐ BAs Permitted | No. of Days Permitted: |
|---|---|---|---|
| | | ☐ Deferred Payments Permitted | No. of Days Permitted: |
| | Standby LCs: | ☒ Auto Extension Permitted | Not Beyond Date (optional): |
| | Clean BAs: | ☐ Permitted | No. of Days Permitted: |

| Guarantor: ** | Name: | Country of Guarantor: | % of LC/BA Guaranteed: |
|---|---|---|---|
| | 1. | 1. | 1.  % |
| | 2. | 2. | 2.  % |

* The LC Type will impact the regulatory capital required. Refer to the LOAF Instructions for a definition of each LC Type.  ** Attach additional sheet, if necessary.

**A. Participation Bought/Sold (Transaction Information)**

| Participation Type (Check only one): | | |
|---|---|---|
| ☐ Participation Sold | [Under Syndicated Facility: ☐ Yes ☒ No; CMA is a Fronting Bank ☐ Yes ☐ No ] | Also complete Section B and C below, and Attachment A |
| ☐ Participation Bought | [Under Syndicated Facility: ☐ Yes ☒ No; CMA is a Fronting Bank: ☐ Yes ☐ No ] | Also complete Section B below |

| Total Amount of LC Facility: | $ | CMA Amount of LC Facility: | $ |
|---|---|---|---|
| CMA Pro-Rata Share: | % | Fronting Limit Amount: | $ |

All Applicable Documents Must be Attached to LOAF (Check all that apply):

☐ Credit Agreement    ☐ Participation Agreement    ☐ Assignment Agreement    ☐ RECAP    ☐ Agent Bank's Outstanding Report

**B. Participation Bought/Sold (Agent Bank Information)**

| Bank Name: | | Complete Street Address (P.O. Box Prohibited): | |
|---|---|---|---|
| Contact Name: | | Contact Telephone No.: | |
| Contact Fax No.: | | Contact E-mail: | |

**C. Participation Sold (Participating Bank/ Syndicate Member Bank Information) - Attachment A**

Attachment A is completed and attached: ☐ Yes ☐ No, Comments:

**D. Financial Standby LC (Supporting State or Municipal Sponsored Bond Issue Information)**

| Source of Repayment: | Select | Rate: ☐ Fixed ☐ Variable |
|---|---|---|

Published by Global Product Management, Rev. 08/2013                    Page 1 of 3                    For Internal Use Only

International Trade Finance                                                  Lending Officer Approval Form

**SECTION 3  LETTER OF CREDIT AMENDMENT INFORMATION (For Increase and/or Extension of Expiration Date Only)**

| LC No.: | Standalone LC: ☐ Yes ☐ No | Amount of Increase: $ | Expiration Date: | (mm/dd/yyyy) |
|---|---|---|---|---|

**SECTION 4:  PRICING INFORMATION**

**A. Commission Rates/Types**

☒ Letters of Credit *

| | Standby LC | Import LC | Export LC |
|---|---|---|---|
| Issuance Commission Rate: | 1.00% | % | |
| Amendment Commission Rate: | % | % | |
| BA Commission Rate: | | % | % |
| Discounted BA Commission Rate: | | % | % |
| Deferred Payment Commission Rate: | | % | % |
| Confirmation Commission Rate: ** | % | | % |
| Fronting Commission Rate: | % | % | |
| Collection of Commission(s)/Fees: | In Advance | | |
| Other (Non-Commission) Fees – Pricing Type: | ☐ Standard Pricing  ☐ Non-Standard Pricing: *** Select | | |

☐ International Collections

| Fees – Pricing Type: | ☐ Standard Pricing  ☐ Non-Standard Pricing: *** Select |
|---|---|

* Refer to the Relationship Pricing Model (RPM) for Standby Letter of Credit Pricing Guidelines and Commercial Letter of Credit Pricing Guidelines.
** Requires a Foreign/Domestic Bank Risk Approval Form.  Contact International Trade Finance to coordinate the completion of a Foreign/Domestic Bank Risk Approval Form.
*** Requires an International Trade Finance Special Pricing and Waiver (SPW) Authorization Form.  Attach completed SPW Authorization Form with required approvals to LOAF.  Contact International Trade Finance to coordinate the completion of a SPW Authorization Form.

**B. Effective Date of Pricing**

04/04/2014 (mm/dd/yyyy)

**C. Charges Applied By**

☐ Debit to: ☒ DDA Account, ☐ Trust Account:  Account No. 1881852075, Name on Account (if different from Section 1)

☐ Invoice (Note: An invoice fee will be assessed.)

**D. Pricing Questions**

| 1. | Does the pricing meet Comerica Bank's Regulatory and Economic ROE relationship hurdles? * | ☐ Yes ☐ No |
|---|---|---|
| 2. | Has an International Trade Finance SPW Authorization Form been completed and required approval obtained (if applicable)? * | ☐ Yes ☐ No |

* If "No" to 1. and "Yes" to 2. above, please provide rationale for special pricing and/or waivers under Section 8 of the LOAF.

**SECTION 5.  COLLATERAL INFORMATION**

☐ Unsecured

☒ Secured (Complete collateral information below.  Check all that apply.  Attach additional sheet if necessary) *

| 1. ☐ | 040-Regular or Time Savings Account/Cash Deposits/DDAs and Money Market DDAs | Account No.: | Amount: | Currency: US | Country: |
|---|---|---|---|---|---|
| 2. ☒ | 140-Accounts Receivable, Inventory, Equipment | | Amount: 2,000,000.00 | Currency: | Country: |
| 3. ☐ | Select | | Amount: | Currency: | Country: |
| 4. ☐ | Select | | Amount: | Currency: | Country: |
| 5. ☐ | Select | | Amount: | Currency: | Country: |
| 6. ☐ | Select | | Amount: | Currency: | Country: |

* Certain collateral will reduce the regulatory capital required.

**SECTION 6.  CREDIT APPROVAL INFORMATION**

| Facility Type (Check only one): * | ☒ Committed Facility | [ ☐ Revolving  ☐ Non-Revolving ] | Complete Sections A and B below |
|---|---|---|---|
| | ☐ Uncommitted (Discretionary) Facility | [ ☐ Revolving  ☐ Non-Revolving ] | Complete Sections A and B below |
| | ☐ Standalone Basis (Not Under a Facility) | | Complete Section C below |

* The Facility Type will impact the regulatory capital required.

**A. Facility Information**

| Total Amount of Facility: | $12,000,000.00 | Obligor No.: | 7433354242 | Effective Date of Facility: | 04/16/2014 (mm/dd/yyyy) |
|---|---|---|---|---|---|
| Expiration Date of Facility: | 10/16/2015 (mm/dd/yyyy) | LC/BA/Deferred Payment Credit Exposure NOT to go beyond Select from Expiration Date of Facility | | | |

**B. Sub-Limit Information**

| Sub-Limit for (Check all that apply): | Sub-Limit Amount: | Sub-Limit (Obligation) No.: |
|---|---|---|
| ☐ Commercial LCs | $ | |
| ☒ Financial Standby LCs | $2,000,000.00 | NEW |
| ☐ Performance Standby LCs | $ | |
| ☐ BAs/Deferred Payments – Not Discounted | $ | |

**C. Standalone Information**

| Obligor No.: | Obligation No.: |
|---|---|

International Trade Finance                                                     Lending Officer Approval Form

**SECTION 7. INSTRUCTIONS FOR SET-UP OF ITS LIMIT INTO ITS SYSTEM ( if Applicable )**

To allow a customer to submit applications for LCs/BAs (up to a limit) directly to ITS with no further LOAFs required, an ITS Limit must be set-up on the LC system. A current RSCAP, Authority to Procure Loans and Continuing Letter of Credit Agreement MUST BE ATTACHED for this option to be implemented.

☒ Set-up ITS Limit for LCs/BAs, effective immediately    Amount of ITS Limit: $          Expiration Date of ITS Limit:        (mm/dd/yyyy)

**SECTION 7A. HAND WRITTEN OR SPECIFIC COMMENTS TO THE ITS INSTRUCTIONS ( if Applicable )**

**SECTION 8. LENDING OFFICER APPROVAL**

| Lending Officer Name: | Kenny Barhanovich | | | | |
| Lending Officer No.: | 43656 | IMS Corp. No.: | 43 | Cost Center: | 90546 |
| Telephone No.: | 713-607-2007 | Fax No.: | 713-607-2987 | Mail Code: | 6609 |
| Lending Officer Signature: | | | | Date: | 05/02/14 (mm/dd/yyyy) |

BY SIGNING THIS LOAF, LENDING OFFICER CERTIFIES:

1. A *Letter of Credit Application and Agreement* or *Request for Letter of Credit Amendment* form signed by the applicant is attached and the customer name is the legal entity name.

2. The applicant's outstandings have been checked and once this LC has been issued or amended, the outstandings will still be within the approved limits, applicable borrowing-base formula and facility size. If necessary, an over-the-line credit approval has been obtained for this transaction.

3. The required approvals (e.g., change of exposure or exposure type, special pricing and/or waiver) and/or loan documentation (e.g., amendment for present loan, security agreement, new agreement, legal relevance letter – CA only) have been obtained.

4. An *Authority to Procure Loans* or similar document is in place for verification of the signature(s) on the *Letter of Credit Application and Agreement* and those signatures have been verified. If an *Authority to Procure Loans* or similar document is not in place, the approving Lending Officer is approving this transaction and is responsible for obtaining the required documents promptly.

5. All Comerica Bank Customer Identification Program (CIP) Policy requirements have been completed on the LC applicant.

**ADDITIONAL INSTRUCTIONS:**

1. **Submitting the LOAF to ITS – Trade Operations Support**
   The completed LOAF with the approving Lending Officer signature must be sent to the designated ITS – Trade Operations Support group via e-mail (a scanned copy in PDF format) using secure e-mail, i.e., Lotus Notes):

   - California Market      BBFITSCATTradeOperationsSupport
   - Michigan Market        BBFITSTradeOperationsSupport
   - Texas Market           BBFITSTXTradeOperationsSupport

2. **Submitting the LOAF to LTS (Only for Issuance of LCs for New Customers)**
   To request the issuance of LCs for a new customer, the completed LOAF must first be sent to the Lending and Trade Services (LTS) Department, to set-up the new customer in the Automated Financial System (AFS) and provide the Obligor and Obligation numbers.

   The LOAF must then be updated with the Obligor and Obligation numbers and e-mailed (a scanned copy in PDF format using secure e-mail, i.e., Lotus Notes) to the designated ITS – Trade Operations Support group to initiate the issuance of LCs. ITS must have the Obligor and Obligation numbers entered in the LC system in order to issue LCs and to pass the LC outstanding balances to AFS.

3. **Managing Outstandings/Availability for LCs**
   Lending Officers are responsible for managing outstandings/availability for LCs under their customers' credit facilities. This is not managed by ITS. Having an ITS Limit in the LC system can assist Lending Officers with managing LC outstandings/availability. For more information, refer to Section 7 of the LOAF.



**International Trade Services**

*Customer Outstanding Report*

As of Date: 3/2/2018 12:00:00 AM
Run Date: March 02, 2018; 5:24:39 PM

| Instrument ID | Purpose Type | Customer Name | Beneficiary Name | Beneficiary Notify Days | Issue Date | Expiry Date | Auto Extend | Currency | Outstanding FX Amount | Outstanding Liability (USD) | Total Comerica Outstanding Liability (USD) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | $105,000.00 | $105,000.00 |
| CISB1780T | Financial SLC | East West Copolymer and Rubber LLC | Great American Insurance Company | 30 | 5/6/2014 | 4/17/2018 | Y | USD | | $105,000.00 | $105,000.00 |

Footnotes:  1) Report does not include discounted bankers acceptances.

Report: CMA436

Page: 1 of 1

 **Com**‌ **Jank**

International Trade Services
2321 Rosecrans Ave. 5th Fl.
El Segundo, CA 90245
Tel: 310-297-2858
Fax: 310-297-2885
SWIFT: MNBDUS4DXXX

# ORIGINAL

**Irrevocable
Standby Letter of Credit
No. OSB1780T**

**Amendment no. 2**
Dated April 26, 2017

| | |
|---|---|
| **Beneficiary:** | **Applicant:** |
| Great American Insurance Company | East West Copolymer and |
| Attn: John Dougherty | Rubber LLC |
| Specialty Accounting, GAT 17N | 5955 Scenic Highway |
| 301 East 4th Street | Baton Rouge, LA 70805 United States |
| Cincinnati, OH 45202-4201 | |
| United States | |

**We amend our Standby Letter of Credit subject to the following terms and conditions. This amendment forms an integral part of the original instrument. All other terms and conditions remain unchanged.**

**Amended Terms:**

Please note applicant requested cancellation of the Letter of Credit.

Unless otherwise instructed herein, all correspondence and inquiries regarding this transaction should be directed to our Customer Service Center at the above address, telephone: 310-297-2841 or 310-297-2839. Please indicate our reference number in all your correspondence or telephone inquiries.

Regards,

ROMY BOSANCIC
AUTHORIZED SIGNATURE

_____
Authorized Signature(s)

Please signify your acceptance or rejection of this amendment on the attached copy of this letter and return to us at the above address.

Accepted by Beneficiary:_____ Date: _____

Rejected by Beneficiary:_____ Date: _____



**Comerica Bank**

International Trade Services
2321 Rosecrans Ave. 5TH Fl.
El Segundo, CA 90245
Tel: 310-297-2858
Fax: 310-297-2855
SWIFT: MNBDUS6SXXX

## Irrevocable
## Standby Letter of Credit
## No. OSB1780T

~~Amendment no. 1~~
Dated September 04, 2015

**Beneficiary::**
Great American Insurance Company
49 East 4Th Street, 4th Floor South
Cincinnati, OH  45202-4201
Attn:  John Dougherty, United States

**Applicant:**
East West Copolymer and
Rubber LLC
5955 Scenic Highway
Baton Rouge, LA 70805 United States

**We amend our Standby Letter of Credit subject to the following terms and conditions. This amendment forms an integral part of the original instrument. All other terms and conditions remain unchanged.**

**Amended Terms:**

Beneficiary's address now to read
Attn:  John Dougherty
Specialty Accounting, GAT 17N
301 East 4th Street
Cincinnati, OH  45202-4201

This amendment is being done pursuant to beneficiary's letter requesting same dated May 07, 2014
addressed to Comerica Bank and therefore does not require beneficiary's written approval.

Unless otherwise instructed herein, all correspondence and inquiries regarding this transaction should be directed
to our Customer Service Center at the above address, telephone: 214-828-5965 or 214-828-5930.  Please
indicate our reference number in all your correspondence or telephone inquiries.

Regards,

Authorized Signature(s)

**AMY WONG**
AUTHORIZED SIGNATURE

 Comerica Bank

# Irrevocable
# Standby Letter of Credit No.
# OSB1780T

**Beneficiary:**
Great American Insurance Company
49 East 4th Street, 4th Floor South
Cincinnati, OH 45202-4201
Attention: John Dougherty, United States

**Applicant:**
East West Copolymer and
Rubber LLC
5955 Scenic Highway
Baton Rouge, LA 70805  United States

**Date of Issue:**
May 06, 2014

**Date and Place of Expiry:**
April 17, 2015 office of Issuing Bank
or any automatically extended date, as herein
defined.

**Amount:**
USD 105,000.00 One Hundred Five Thousand and 00/100
United States Dollars

Dear Mr. Dougherty:

Comerica Bank (sometimes hereinafter referred to as the Bank), hereby establishes in your favor for the account of East West Copolymer & Rubber LLC (the Company), its irrevocable letter of credit no. OSB1780T (this Letter of Credit) in a maximum amount of up to United States Dollars One Hundred Five Thousand and no/100 (as more fully described below) effective immediately and expiring at Comerica Bank on April 17, 2015 (the Expiration Date) or, if the Expiration Date is not a business day (as hereinafter defined), on the next succeeding business day, unless terminated earlier in accordance with the provisions hereof.

As used in this letter of credit, the term "Business Day" shall mean any day of the year, other than a Saturday or a Sunday, on which banks located in the cities in which the principal corporate office of the



 **Comerica Bank**

Company and the principal office of the Bank are located are not required or authorized by law to remain closed or on which the payment system of the Federal Reserve System is operational.

You are hereby irrevocably authorized to draw on us, for the account of the Company, in accordance with the terms and conditions hereof and subject to increases and reductions in amounts as hereinafter set forth, an aggregate amount not exceeding United States Dollars One Hundred Five Thousand and no/100 (USD 105,000.00) (the Stated Amount). All drawings under this letter of credit will be paid with our own funds and will not be paid directly or indirectly from funds or collateral on deposit with or for the account of, or pledged with or for the account of, the Bank by the Company.

Funds under this letter of credit are only available to you against your sight draft(s) drawn on us, substantially in the form of Exhibit 1 attached hereto, stating on their face: "Drawn under Comerica Bank letter of credit no. OSB1780T."

Presentation of such draft(s) shall be made on a business day at our office located at 6260 E. Mockingbird Lane, 2nd Fl., MC-6588, Dallas, TX 75214 Attention International Trade Services or any other place which may be designated by us by written notice delivered to you. If we receive any of your drafts drawn hereunder at such office, all in strict conformity with the terms and conditions of this letter of credit, on or prior to the termination hereof, we will honor the same and make payment hereunder. If requested by you, payment may be made by deposit of such funds into a designated bank account that you maintain at the Bank.

This letter of credit shall be outstanding until April 17, 2015 and shall thereafter terminate in accordance with the terms hereof. It is a condition of this letter of credit that it shall be deemed automatically extended without amendment for a period of one year from the present or any future expiration date, unless at least thirty (30) days prior to the expiration date we send you notice by courier that we elect not to extend this credit for any such additional period. Said notice will be sent to the address indicated above, unless a change of address is otherwise notified by you to us in writing by receipted mail or courier. Any notice to us will be deemed effective only upon actual receipt by us at our designated office.

Except as otherwise expressly stated herein, this letter of credit is subject to International Standby Practices ISP98 (International Chamber Of Commerce Publication #590). This letter of credit shall be deemed to be made under the laws of the State of Texas, and shall, as to matters not governed by the ISP, be governed and construed in accordance with the laws of the State of Texas without regard to conflict of laws principles.

Regards,

Authorized Signature(s)

COPY

Exhibit 1

To Letter of Credit OSB1780T

SIGHT DRAFT

_____, 20___

FOR VALUE RECEIVED,

PAY ON DEMAND TO: _____

_____ DOLLARS (U.S.

$_____ )

CHARGE TO ACCOUNT OF _____.

DRAWN UNDER COMERICA BANK LETTER OF CREDIT NO. OSB1780T.

TO:     COMERICA BANK

        INTERNATIONAL TRADE SERVICES

        6260 E. MOCKINGBIRD LANE, 2N FL.

        MC-6588

        DALLAS, TX 75214

GREAT AMERICAN INSURANCE COMPANY


BY:     _____

ITS:    _____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| EAST WEST COPOLYMER, LLC | ) | Case No. 17-10327 |
| | ) | |
| Debtor. | ) | |

## STIPULATION REGARDING SETOFF RIGHTS, CARVE OUT FOR THE LIQUIDATING TRUST AND CASH COLLATERAL

**WHEREAS,** on April 7, 2017, East West Copolymer, LLC ("Debtor") filed for bankruptcy relief under chapter 11 of the Bankruptcy Code.

**WHEREAS,** on November 29, 2017, the Court confirmed the *Chapter 11 Plan of Liquidation Proposed by East West Copolymer, LLC and the Official Committee of Unsecured Creditors Dated October 20, 2017 and Immaterially Modified as of November 29, 2017* [Docket No. 343] (the "Plan")[1];

**WHEREAS,** the Plan went effective on December 14, 2017;

**WHEREAS,** consistent with the Plan and pursuant to the confirmation order, Dwayne Murray was appointed the Liquidating Trustee;

**WHEREAS,** the Liquidating Trust took ownership of the Debtor's former Debtor in Possession bank account with Comerica Bank ("Comerica"), subject to potentially competing secured claims of Comerica, arising out of its contractual arrangement involving a letter of credit with its counterparty Great American Insurance Company ("GAIC") and Main Street Capital Corporation ("MSC") based on its Court-recognized interest in the Debtor's cash collateral;

---

[1] Capitalized terms not defined herein are as defined in the Plan.

1951102v.1


EXHIBIT
2

WHEREAS, on Joint Motion of the Liquidating Trustee and GAIC to Approve Stipulation Regarding Proceeds, the Court entered an Agreed Order on Joint Motion to Approve Stipulation Regarding Proceeds of Letter of Credit on August 9, 2018 [Docket No. 499](the "Agreed Order");

WHEREAS, the Agreed Order authorized GAIC to draw upon the letter of credit (No. OSB1780T) issued by Comerica on May 6, 2014, in the amount of $105,000, with a retention thereafter by GAIC of $15,000 in full satisfaction of any claims or interest that GAIC may have in or to the letter of credit and turnover to the Liquidating Trustee of the remaining $90,000.

WHEREAS, the Liquidating Trustee and MSC have agreed that the $90,000 received by the Liquidating Trust must be paid to MSC in accordance with its recognized priming rights to the Debtor's cash collateral;

WHEREAS, Comerica intends to honor GAIC's draw on the letter of credit and by doing so has triggered a priming security interest, in the nature of setoff rights, against the Account (as hereinafter defined) to reimburse it for the $105,000 to be paid over to GAIC plus contractual rights to fees and expenses.

WHEREAS, the former DIP bank account (Comerica Account No. ending in 2414)(the "Account") has a current balance of $147,380.20.

WHEREAS, the Liquidating Trustee, Comerica and MSC (collectively, the "Parties") agree to the entry of this stipulation ("Stipulation") as follows:

1.    Comerica shall be entitled, subject to court order approving this Stipulation, to retain $108,000 of the funds currently held in the Account to reimburse it for honoring $105,000 on the letter of credit to GAIC, $550 in fees related to the letter of credit draw and reasonable attorneys' fees of $2,450.

2.      The Liquidating Trust shall receive the balance of the  Account funds, namely $39,380.20, of which MSC agrees to carve out $2,880.20 for the Liquidating Trust to reimburse it for the time and expense of negotiating, filing and obtaining court approval of this Stipulation and the prior Agreed Order.  The Account balance of $36,500, along with the aforementioned $90,000 that was the subject of the Agreed Order, shall be paid by the Liquidating Trust over to MSC in accordance with MSC's interest in cash collateral.

3.      Other than with respect to the enforcement of the terms of this Stipulation between the Parties or any obligations memorialized in the confirmed Plan, any and all Claims or Causes of Action, if any exist, by any of the Parties against the other, are hereby fully released and compromised.

4.      The Liquidating Trustee, Comerica and MSC shall cooperate in jointly seeking approval of this Stipulation and agreement.

5.      This Court shall retain exclusive jurisdiction to enforce the terms of this Stipulation.

**AGREED TO AND ACCEPTED BY:**

Dated: September 20, 2018

/s/ Annmarie Chiarello
Annmarie Chiarello
Texas State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)
achiarello@winstead.com

**-and-**

Amanda Messa
**Phelps Dunbar, LLP**
II City Plaza
400 Convention Street, Suite 100
Baton Rouge, LA 70802
*Counsel for Comerica Bank*

/s/ Michael D. Warner
Michael D. Warner, Esq. (Admitted *Pro Hac Vice*)
**COLE SCHOTZ P.C.**
301 Commerce Street, Suite 1700
Fort Worth, Texas 76102
817-810-5250 Telephone
817-810-5255 Facsimile
mwarner@coleschotz.com
*Counsel for Main Street Capital Corporation*

/s/ Michael A. Crawford
Michael A. Crawford (# 22315)
**Taylor, Porter, Brooks & Phillips, LLC**
450 Laurel Street (70801)
8th Floor
Post Office Box 2471
Baton Rouge, Louisiana 70821]
Mike.crawford@taylorporter.com
*Counsel for Liquidating Trustee*